**Joel KRONFELD, Plaintiff,**

v.

**TRANSWORLD AIRLINES, INC.;**
**Transworld Corporation,**
**Defendants.**

**No. 83 Civ. 8641 (KMW).**

United States District Court,
S.D. New York.

Jan. 4, 1990.

Stanley M. Grossman, Pomerantz, Levy, Haudek, Block & Grossman, Harvey Greenfield, New York City, for plaintiff.

Irwin H. Warren, Dushica B. Protic, Weil, Gotshal & Manges, New York City, for Transworld Airlines, Inc.

Robert J. Sisk, Michael E. Salzman, Hughes, Hubbard & Reed, New York City, for Transworld Corp.

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

The Special Master appointed by the Court filed her Report with respect to the Joint Petition of Plaintiffs' Counsel for Attorneys' Fees and Reimbursement ("the Report")[1] on November 13, 1989. The Report recommended a fee award of $917,-970.63 for class counsel Pomerantz Levy Haudek Block & Grossman ("Pomerantz Levy") and a fee award of $141,185.63 for Harvey Greenfield, formerly class counsel and presently counsel for Joel Kronfeld.[2] The Report further recommended reimbursing Pomerantz Levy for expenses in the amount $137,034.85; Harvey Greenfield for expenses in the amount $3,012.92; and plaintiff Joel Kronfeld for expenses in the amount $3,627.50.

The parties subsequently filed submissions with the Court in which Harvey Greenfield objected to the Report and Pomerantz Levy stated that it had no objections to the Report. The Court construes Pomerantz Levy's statement as a motion to adopt the Report.

Pursuant to Rule 53(e)(2), the Court held a hearing on Mr. Greenfield's objections to the Report on December 8, 1989. At that time, Mr. Greenfield objected to the Special Master's recommendation that the Court disallow certain undocumented telephone expenses claimed by Mr. Greenfield and certain undocumented expenses claimed by plaintiff Joel Kronfeld. He also reiterated arguments he made at the hearing held by the Special Master on August 30, 1989, and objections he made in his written submissions to the Court on this subject.

The Court has considered the arguments made by Mr. Greenfield at the August 30 hearing before the Special Master, the objections he made at the December 8 hearing before this Court, as well as the objections made in his written submissions.

The Court has reviewed the Special Master's Report and finds it to be thorough, well-documented and well-reasoned. The Court agrees with the Special Master's recommendations regarding expenses, including her recommendation that undocumented expenses claimed by Mr. Greenfield and plaintiff Joel Kronfeld should not be reimbursed.

The Court believes that the Special Master has correctly assessed the number of hours reasonably spent by counsel in this litigation and has selected the appropriate lodestar rates and the appropriate upward adjustment to be applied to arrive at reasonable compensation for plaintiffs' counsel in this case. With respect to the use of an upward adjustment, the Court agrees with the Special Master that this case presented exceptional risks for plaintiffs' counsel that justify a "risk of loss" multiplier of 1.25.

 Finally, the Court denies enforcement of plaintiffs' counsels' fee-sharing agreement pursuant to the Court's obligation to supervise the ethical conduct of attorneys in class actions, and pursuant to Disciplinary Rule 2–107(A) of the Code of Professional Responsibility. For the reasons set forth in the Special Master's Report, the Court finds that the fee-sharing agreement bears no relation to the services performed, or responsibility assumed, by each law firm, and thus violates Disciplinary Rule 2–107(A).

 The Court hereby adopts the Special Master's Report in its entirety, and awards the following amounts in attorneys' fees and expenses:

$917,970.63 in fees and $137,034.58 in expenses to Pomerantz Levy;

$141,185.63 in fees and $3,012.02 in expenses to Harvey Greenfield; and

$3,627.50 in expenses to Joel Kronfeld.

SO ORDERED.

## APPENDIX

Nov. 13, 1989.

## REPORT OF SPECIAL MASTER

By order dated April 26, 1989, the Court appointed the undersigned Special Master

---

1. The Report is attached as an appendix to this opinion.

2. The Court removed Mr. Greenfield as counsel for the class at a hearing held December 8, 1989.

to review the Joint Petition of Plaintiff's Counsel for Attorneys' Fees and Reimbursement of Expenses (the "Joint Petition") submitted by Pomerantz Levy Haudek Block & Grossman ("Pomerantz Levy") and Harvey Greenfield ("Greenfield"), counsel for the plaintiff class in this action, and to make detailed recommendations to the Court concerning the fees and costs sought by counsel to by paid from the settlement fund. Acting pursuant to such order, the Special Master has reviewed the Joint Petition and Plaintiff's Memorandum in Support of Joint Petition of Plaintiff's Counsel for Attorneys' Fees and Reimbursement of Expenses ("Plaintiff's Memorandum") and various documents referred to therein, requested further information from counsel and reviewed all submissions made by them on or prior to the deadline jointly established by the Special Master and counsel, prepared a draft of this report for counsel's review and circulated such draft to counsel. On August 30, 1989, the Special Master conducted a hearing at which counsel were given an opportunity to present arguments bearing on the report and to suggest any changes that should be made thereto. After consideration of the arguments and suggestions made by counsel, the Special Master makes the following recommendations to the Court:

## I. *Background*

This action was commenced in November 1983 on behalf of Joel Kronfeld and all others who purchased shares of the $2.25 convertible preferred stock of Trans World Airlines, Inc. ("TWA") during the period of July 29, 1983 and September 27, 1983. The complaint alleged violations of certain provisions of the Securities Act of 1933, and of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder.

The basic contention of plaintiff was that on July 29, 1983, the date the registration statement and prospectus pursuant to which the convertible preferred stock was offered to the public became effective, consideration was being given to a total separation of TWA from its parent, Transworld

Corporation; that this fact was material within the meaning of the securities laws as interpreted by such cases as *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976) and *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833 (2d Cir.1968), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); and that TWA had a legal duty to disclose this fact in the registration statement and prospectus and failed to do so.

The case was assigned to Judge Weinfeld. After discovery was completed, the class was certified (104 F.R.D. 50 (S.D.N.Y. 1984)), and notice to the class was given. Judge Weinfeld granted summary judgment to the defendants. Analogizing from cases involving preliminary merger negotiations, Judge Weinfeld held that the consideration being given to the separation of the two companies "did not reflect final corporate determinations" and therefore was too preliminary to constitute a material fact the omission of which could give rise to a claim. 631 F.Supp. 1259, 1264 (S.D.N.Y. 1986). The Second Circuit reversed and remanded to the district court for further proceedings. 832 F.2d 726 (2d Cir.1987). In its decision the Second Circuit accepted plaintiff's contention that the district court applied the wrong legal standard by relying on cases involving preliminary merger negotiations. Instead, the Court held, the applicable test of materiality when the contingent event rests within the control of the corporation requires a balancing of "both the indicated probability that the event will occur and the anticipated magnitude of the event" as provided in *Northway* and *Texas Gulf Sulphur.* Applying this standard, the Court concluded that plaintiff presented genuine issues of material fact as to whether there were material omissions in the prospectus, and that summary judgment was therefore inappropriate. A petition for certiorari filed by the defendants with the Supreme Court was denied. 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 700 (1988).

Following remand, the case was reassigned to Judge Conboy and further depositions were taken. In late summer 1988, the case was reassigned to Judge Wood

and a trial date was set. On the eve of trial, the case was settled. The settlement creates a fund of $3.4 million, plus interest, from which class members are entitled to compensation in an amount equal to their "Allowable Loss" (as defined therein), after deduction from the fund of the costs of giving notice to class members, settlement distribution costs and attorneys' fees and expenses. Any amount remaining after all such class claims and costs are paid reverts to the defendants. Notice of the proposed settlement was mailed to each identified class member on or about February 4, 1989, and notice by publication was also made. No objections to the proposed settlement or to the proposed fee award were made. The settlement was approved by Judge Wood at a hearing on March 31, 1989. Plaintiff now seeks a determination of the reasonable attorneys' fees and expenses to which his counsel are entitled from the fund.

## II. *The Lodestar Formulation*

The Second Circuit has long held that the analysis of attorneys' fees in equitable fund cases begins with the calculation of a "lodestar" amount. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974) ("*Grinnell I*") and *City of Detroit v. Grinnell*, 560 F.2d 1093 (2d Cir.1977) ("*Grinnell II*"). The lodestar is determined by "multiplying the number of hours expended by each attorney involved in each type of work in the case by the hourly rate normally charged for similar work by attorneys of like skill in the area." *Id.* at 1098. Once the lodestar has been computed,

courts may weigh other "objective factors," including the "risk of litigation, the complexity of the issues, and the skill of the attorneys," in setting a final fee award. *Id.* In consideration of these factors, the lodestar may be adjusted upward or downward to arrive at the final fee. Traditionally, adjustments are made with reference to a "multiplier," a factor by which the lodestar is multiplied to reach the desired figure.

Plaintiff's Joint Petition provides detailed information to permit computation of a lodestar figure. At the same time, Plaintiff's Memorandum raises the possibility that courts may look beyond the lodestar formulation and award a fee "in terms of the percentage it represents of the total recovery." Plaintiff's Memorandum at 18, *quoting In re Warner Communications Securities Litigation*, 618 F.Supp. 735, 749 (S.D.N.Y.1985), *order aff'd*, 798 F.2d 35 (2d Cir.1986). Additional support for this view can be found in a somewhat perplexing footnote to the Supreme Court's opinion in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), itself a statutory fee case under 42 U.S.C. § 1988, where Justice Powell in dicta contrasted the case at hand with "the calculation of attorney's fees under the 'common fund doctrine' ... [where the award] is based on a percentage of the fund bestowed on the class." *Id.* at 900 n. 16, 104 S.Ct. at 1550 n. 16.[1]

Despite the quoted Supreme Court dicta, Second circuit jurisprudence is clear as to the proper basis for "common fund" fee calculations. The analysis begins with the lodestar. The Second Circuit has recently

---

1. Relying on *Blum,* a district court in this circuit recently awarded attorneys' fees in a securities class action based solely on a percentage of the "common fund." *In re Iomega Securities Litigation,* [1987–1988 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 93,542, 1987 WL 43391 (D.Conn. 1987). *Cf. Greene v. Emersons Ltd.,* [1987–1988 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,263, 1987 WL 11558 (S.D.N.Y.1987) (awarding ⅓ of common fund, as requested, when percentage recovery was less than lodestar computation). *See Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 454 (10th Cir.1988) ("the award of attorneys' fees on a percentage basis in a common fund case is not *per se* an abuse of discretion");

*Pavlidis v. New England Patriots Football Club,* 675 F.Supp. 707 (D.Mass.1987) (awarding fees in common fund case on contingent fee percentage basis). In *Mashburn v. National Healthcare, Inc.,* 684 F.Supp. 679 (M.D.Ala.1988), also a securities class action, the court agreed with class counsel that lodestar-based analyses "are no longer applicable in common fund fee cases." Nonetheless, "in an abundance of caution," the court chose to "review the requested fee under a lodestar analysis" in addition to the percentage-based approach. *Id.* at 698. *See also Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 640 F.Supp. 697, (S.D.Ohio 1986).

reaffirmed its reliance on the lodestar formulation "for calculating [attorney's] fees in equitable fund and statutory fee contexts." *In re Agent Orange Product Liability Litigation*, 818 F.2d 226, 232 (2d Cir.1987) ("*Agent Orange I*").

Percentage-based calculations may, however, be used to demonstrate that the fee awarded is reasonable, given the size of the jury verdict or settlement fund. *See, e.g., Rievman v. Burlington Northern Railroad Co.*, 118 F.R.D. 29, 35 (S.D.N.Y. 1987) ("Viewed as a percentage of the total class recovery, attorneys' fees are typically considered reasonable if they amount to twenty to fifty percent of the settlement fund."); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 700 F.Supp. 208, 209 (S.D.N.Y.1988) (lodestar-based award of approximately 15.7% of $4,000,000 settlement fund held "well within the customary range" for class securities action). The Special Master has, as set forth herein, calculated an appropriate lodestar figure, set an applicable multiplier, and then determined the percentage of the fund represented by the resulting figure to judge its reasonableness.

## A. Time Reasonably Expended

The first step in arriving at the lodestar is to determine the number of compensable attorney hours by evaluating each task and its benefit to the class. *Agent Orange I*, 818 F.2d at 237; *Grinnell II*, 560 F.2d at 1099. The court has a "duty in class actions to award fees with moderation and a jealous regard for the rights of those with an interest in the fund but who are not before the Court." *Burger v. CPC Intern, Inc.* 76 F.R.D. 183, 188 (S.D.N.Y.1977), *quoted in Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 700 F.Supp. 208, 209 (S.D.N.Y.1988). "Ample authority supports reduction in the lodestar figure for overstaffing as well as for other forms of duplicative or inefficient work." *Seigal v. Merrick*, 619 F.2d 160, 164 n. 9 (2d Cir.1980). In addition, a court must analyze the tasks entrusted to various lawyers to ensure that they were performed by individuals with appropriate skills and experience. *In re Equity Funding Corp. of America Securities Litigation*, 438 F.Supp. 1303, 1330 (C.D.Cal.1977). Partners should not perform duties that could as readily be performed by associates, and associates should not do paralegal work. *Barnett v. Pritzker*, 73 F.R.D. 430, 433 (S.D.N.Y.1977). The Special Master has, therefore, reviewed the Joint Petition and the accompanying declarations and back-up documentation (including time records) for duplication of efforts, unsubstantiated or inconsistent time entries, excessive time spent, and possible misapplication of personnel for the work performed.

### a. *Pomerantz Levy*

Pomerantz Levy seeks compensation for a total of 5,158.35 hours (including 677.35 hours recorded in the actual time records submitted with the Joint Petition but inadvertently omitted in calculating the total time for which compensation was sought in the Joint Petition, as noted in Affidavit of Shaheen Rushd in Support of Submission of Pomerantz Levy Haudek Block & Grossman to Special Master Bartell's Request for Information, and Appendix A thereto). The Special Master has scrutinized Pomerantz Levy's time records as well as other documentation and, with minor exceptions, the hours spent by that firm for the tasks performed appear reasonable. The exceptions are as follows:

(1) *Multiple partners at depositions.* At three of the 27 depositions attended by attorneys from Pomerantz Levy, more than one partner from that firm was present. The firm has submitted an affidavit attempting to justify this apparently duplicative work. Although their explanations may have some merit, the Special Master believes that the presence of these additional partners was not directly beneficial to the class and that their time should therefore be disallowed. The Special Master therefore recommends that the following hours be eliminated:

| Date | Partner | Hours |
| --- | --- | --- |
| 5/10/85 | Mr. Gross | 7.0 |
| 5/15/85 | Mr. Gross | 7.5 |
| 10/7/88 | Mr. Grossman | 6.0 |

(2) *Unsubstantiated telephone entries.* The lawyers at Pomerantz Levy and Mr.

Greenfield spent a great deal of time on the telephone talking to each other. At the request of the Special Master, Pomerantz Levy produced a chart showing, for each day on which one firm has a time entry showing a telephone conference with the other, the comparable daily entry for the other firm. Although, as discussed below, in most of those cases in which matching entries were not found, the time was claimed by Greenfield and not by Pomerantz Levy, in several instances Greenfield's records failed to show receipt of a telephone call Pomerantz Levy claimed to have made. The burden is on counsel seeking fees to substantiate that the time claimed was actually spent and benefited the class. *See Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"); *Grinnell II*, 560 F.2d at 1099 ("[T]he touchstone for the fee [is] the actual effort made by the attorney to benefit the class"). For the reasons stated in more detail below with respect to the Greenfield time, the Special Master recommends eliminating the 5.5 hours of Mr. Gross and 1.85 hours of Ms. Rushd recorded for telephone calls for which no matching entry appeared in the Greenfield records. See Appendix A attached hereto.

■ (3) *Inappropriate staffing.* Approximately 60 hours of research and other similar work done by Mr. Gross appeared to be relatively routine legal services of a kind more appropriately assigned to a junior associate. Rather than reducing the total number of hours, the Special Master

recommends reducing the hourly rate for Mr. Gross's time spent on these tasks from $150/hour to $100/hour (the rate established by Pomerantz Levy for Ms. Rushd).

b. *Greenfield*

Greenfield requests fees for a total of 860.75 hours. After examining Greenfield's records and supplemental submissions, the Special Master recommends time reductions in the following areas and for the following reasons:

(1) *Telephone contacts and conferences with the Kronfelds.* Numerous entries in the Greenfield time records show time spent in conference with Joel Kronfeld and/or his parents. Although there was controversy surrounding Mr. Kronfeld's appropriateness as class representative from the time the suit was filed until the class was certified in December 1984, the Special Master does not see how such constant and protracted contact between counsel and the Kronfelds after 1984 benefited the class as a whole. The entries recording time spent on the phone with the Kronfeld family are general in nature and appear to be simple progress reports. Although Mr. Greenfield was entitled (indeed, was required) to keep the class representative apprised of developments in the case, the time devoted to this task was excessive. In addition, as discussed below, the minimum period for which Mr. Greenfield recorded any telephone call was .25 of an hour, well in excess of the actual time spent on many of these calls.[2] Under these circumstances, the Special Master recommends a reduction in the 111.5 hours requested for such calls and meetings after December 1984 of 75% (83.6 hours).[3] Time was not deducted

2. Although Mr. Greenfield was unable to locate many telephone bills substantiating the time spent communicating with Mr. Kronfeld, the two he did submit (Exhibit B to Letter dated August 29, 1989 from Mr. Greenfield to Special Master Bartell) show calls to Israel of 5 minutes on April 3, 1988 and 1 minute on March 5, 1986, for each of which he recorded .25 of an hour.

3. On many days during this period the Greenfield records show a call or meeting with the Kronfelds as one of several activities devoted to this case, with no specific allocation of time

between them. In disallowing time on those "mixed-activity" days, the Special Master has calculated the average time spent on such calls and meetings on those days for which such activities are the only ones recorded. The average time recorded for a Greenfield–Kronfeld contact was approximately one hour. There were 67 days on which Greenfield devoted a total of 117.75 hours to a Kronfeld contact and other activities. The Special Master has assumed that the Kronfeld contacts represented 67 of these hours (67 days × 1 hour) and recommends a reduction of 75% of this time. A

604

for contacts that appeared to relate to the 2/8/85 deposition of Morris Kronfeld (see discussion below).

(2) *Telephone contacts with Pomerantz Levy.* Independent time records may be expected to show discrepancies over a five year period. Counsel are not always the most careful recordkeepers. However, when counsel are seeking compensation for their efforts from a common fund, their records should withstand close scrutiny. Entries showing time spent conferring with co-counsel should be subject to corroboration by co-counsel's own time records. Greenfield records an inordinately large number of telephone and other contacts with Pomerantz Levy that do not appear in Pomerantz Levy's records. See Appendix C attached hereto. The Special Master recognizes that often, while counsel are in the midst of working on a particular matter, a brief but relevant phone contact may not be recorded. However, approximately one-third of Greenfield's telephone entries to Pomerantz Levy occur on days during which no work on the case at all is recorded by Pomerantz Levy.

█ Furthermore, the briefest phone call recorded in Greenfield's time records was one-quarter of an hour. Although counsel seeking compensation for their time from fee-paying clients have the right to establish whatever minimum billing period they wish, cognizant that marketplace pressures will ensure that they are not unreasonable in their practices, in this common fund case, it seems unreasonable to charge the class for numerous calls of this duration billed by a senior partner which were not significant enough to warrant note in Pomerantz Levy's records. "The implication [of the absence of a corresponding notation in the records of counsel receiving the call]

is that a particular telephone conference ... was not so significant or of such benefit to the class that it was recorded by both counsel." *In re WICAT Securities Litigation,* 671 F.Supp. 726, 735 (D.Utah 1987) (reducing time by 50%); *Rothfarb v. Hambrecht,* 649 F.Supp. 183, 190, 194–195 (N.D. Ca.1986) (disallowing all time).[4]

In view of the generous minimum billing period Greenfield has established and the absence of matching entries in the records of Pomerantz Levy, the Special Master recommends reducing the approximately 120 hours sought by Greenfield for telephone calls and meetings with Pomerantz Levy for which no corroborative entry appears in the Pomerantz Levy time records by 75% (a disallowance of 90 hours).

The Special Master also notes an entry where two lawyers record a conference with Mr. Greenfield that does not appear on the Greenfield time records. Because there is corroboration by two attorneys of the time and of Mr. Greenfield's presence, an additional 4 hours should be awarded to Mr. Greenfield. (See Pomerantz Levy time record for 5/30/84.)

█ (3) *Depositions.* Mr. Greenfield has failed to explain to the Special Master why his presence at many of the 21 depositions he attended was necessary to or benefited the plaintiff class. The only justification he offers is that "[i]f one is to properly participate in depositions, it is necessary to attend them all" and "Kronfeld ... insisted on it." Letter dated August 29, 1989 of Mr. Greenfield to Special Master Bartell, at 2. Neither of these arguments is persuasive. The presence at a deposition of two partners (whether from the same firm or different firms), without a showing that each had a distinct responsibility in the case necessitating his or her presence, is duplicative and noncompensable. *See, e.g.,*

summary of all entries indicating contact between Mr. Greenfield and the Kronfelds after December 1984 appears as Appendix B attached hereto.

4. Mr. Greenfield has suggested that many of these calls were not recorded because he called repeatedly without reaching the party (Mr. Grossman or Ms. Rushd) he was seeking. He

has provided no authority for the proposition that counsel should be compensated for making phone calls answered by receptionists and secretaries with whom a request for a return call was left. Such time certainly did not benefit the class and in any event the actual time that should have been required for such calls would have been *de minimis.*

*Seigal v. Merrick,* 619 F.2d 160, 163 (2d Cir.1980); *In re WICAT Securities Litigation,* 671 F.Supp. 726, 735 (D.Utah 1987).

Mr. Greenfield was the only partner present at the deposition of Lester Crown held in Chicago on August 4, 1988 (Pomerantz Levy was represented by Shaheen Rushd.) The Special Master recommends that Greenfield receive compensation for all 18.5 hours spent at this deposition. Mr. Greenfield's participation in preparation for the deposition of Herbert Silverberg (October 24, 1985) also appears to have been significant. The Special Master therefore recommends that Greenfield also receive compensation for the 25.25 hours spent preparing for and attending that deposition. At six other depositions (those of Gleberman, Cummings, Casati, Brokaw, Murray and Meyer), Mr. Greenfield questioned the deponent, although his participation appears to have been very limited in nature. The Special Master recommends an 80% reduction in the 50.25 hours for which compensation is sought (a deduction of 40.2 hours).[5] Because of Mr. Greenfield's relationship with the plaintiff and his family, the Special Master recommends compensating Mr. Greenfield for all 75.75 hours spent at or preparing for Joel Kronfeld's deposition as well as that of his father, Morris Kronfeld. There remain 200.25 hours recorded by Mr. Greenfield as time preparing for and attending depositions. This should be eliminated as duplicative and not of benefit to the class.[6] For a summary of Mr. Greenfield's total participation in depositions and deposition-related activities, see Appendix D attached hereto.

Greenfield also requests fees for 22.75 hours of paralegal time. All of this time was spent at depositions for which the Special Master has recommended that Mr. Greenfield not be compensated. The Special Master also recommends that such paralegal time be disallowed.

■ (4) *Time Spent on Fees.* According to the Joint Petition, at 28, counsel are not seeking compensation for the time spent on their request for attorneys' fees. Such compensation is inappropriate in a common fund case. *See Grinnell II,* 560 F.2d at 1102. On January 1, 1985, Mr. Greenfield recorded 4 hours spent on calculating time to date, which Mr. Greenfield conceded at the August 30, 1989 hearing were not compensable. These hours should be eliminated.

B. Hourly Rate

The next step in determining the lodestar is fixing a reasonable hourly rate. The general rule is that courts look to "the hourly rate normally charged for similar work by attorneys of like skill in the area". *Grinnell II,* 560 F.2d at 1098. As suggested by *New York State Assoc. for Retarded Children v. Carey,* 711 F.2d 1136, 1153 (2d Cir.1983), both Pomerantz Levy and Greenfield have requested lodestars incorporating uniform hourly rates for each of two temporal phases. For time spent during the years 1983 through 1985, compensation is requested at 1985 historical rates. Counsel seek 1988 current rates for all work done after 1985.

a. *Pomerantz Levy*

Pomerantz Levy is well known and experienced in securities litigation and has provided documentation showing that the requested hourly rates for each of its attorneys are their normal billing rates for the time in question. Further documentation in the form of affidavits of counsel submitted in other common fund cases was supplied to establish that these normal billing rates fall within the range of those

---

**5.** 1.5 of these deposition related hours have also been reduced at 75% as uncorroborated telephone contacts with Pomerantz Levy. An additional .25 of an hour was reduced at 75% as unnecessary contact with the Kronfelds. In the calculation of the Greenfield Lodestar, the Special Master has compensated for this initial double-counting by adding time at the appropriate hourly rate (see page 607, note 7).

**6.** 12.5 of these deposition related hours have also been reduced at 75% as uncorroborated telephone contacts with Pomerantz Levy. In the calculation of the Greenfield Lodestar, the Special Master has compensated for this initial double-counting by adding time at the appropriate hourly rate (see page 607, note 7).

rates charged by counsel of reasonably comparable skill, experience and reputation for comparable work. After a review of this evidence, the Special Master finds the current and historical rates requested by that firm to be reasonable.

b. *Greenfield*

Greenfield has failed to produce any documentation to support the reasonableness of the current hourly rate of $375.00 or historical hourly rate of $300.00 sought in the Joint Petition other than his own affidavits submitted in other cases, none of which was in the Second Circuit, and an article from *The National Law Journal.* The article, rather than supporting his request, suggests that, even at the largest and best-known law firms in New York City, very few partners are billed out at the rates sought by Mr. Greenfield. These submissions fail to satisfy the burden of demonstrating that the hourly rates sought are reasonable. The Special Master therefore recommends that Mr. Greenfield's time be compensated at the hourly rates justified by the Pomerantz Levy submissions for Julius Levy. Mr. Levy is a name partner who is well known for his skill and experience, as is Mr. Greenfield. The hourly rate for Mr. Greenfield would thus be $250.00 for the years 1983 through 1985 and $300.00 for the years 1986 through 1989.

The Special Master has recommended deducting all of the paralegal hours requested by Greenfield for reasons stated above. Nevertheless, in the event that the court determines such hours should be compensable, the Special Master recommends that they be compensated at the requested rates which she has found to be reasonable paralegal rates for Pomerantz Levy.

## C. Computation of Lodestar

Pomerantz Levy
1983–1985

| Attorney | Requested Hours | Hourly Rate | Subtotal | Adjustments | Total |
|---|---|---|---|---|---|
| L. Green | 5.75 | $ 80 | $ 460.00 | | $ 460.00 |
| M. Gross | 480.90 | 150 | 72,135.00 | $5.5 \times \$150 = \$\ 825$ (1) | |
| | | | | $14.5 \times \$150 = \$2,175$ (2) | |
| | | | | $60.0 \times \$\ 50 = \$3,000$ (3) | |
| | | | | $6,000 | 66,135.00 |
| S. Grossman | 672.20 | 220 | 147,884.00 | | 147,884.00 |
| S. Hoffman | 2.75 | 175 | 481.25 | | 481.25 |
| J. Levy | 111.75 | 250 | 27,937.50 | | 27,937.50 |
| R. Matlin | 14.00 | 80 | 1,120.00 | | 1,120.00 |
| L. Paskowitz | 33.90 | 90 | 3,051.00 | | 3,051.00 |
| S. Rushd | 1,407.40 | 100 | 140,740.00 | | 140,740.00 |
| B. Stumpf | 110.50 | 135 | 14,917.50 | | 14,917.50 |
| J. Tabacco | 2.20 | 150 | 330.00 | | 330.00 |
| Law Clerk/Paralegal | | | | | |
| V. Eng | 264.00 | 50 | 13,200.00 | | 13,200.00 |
| M. Sanger | 22.40 | 50 | 1,120.00 | | 1,120.00 |
| C. Vargas | 9.75 | 35 | 341.25 | | 341.25 |
| | | | $423,717.50 | | $417,717.50 |

1. Uncorroborated telephone time
2. Duplicative time at depositions
3. Inappropriate staffing

1986–1989

| Attorney | Requested Hours | Hourly Rate | Subtotal | Adjustments | Total |
|---|---|---|---|---|---|
| J. Block | 2.00 | $115 | $ 230.00 | | $ 230.00 |
| A. Davidovitz | 106.50 | 95 | 10,117.50 | | 10,117.50 |
| M. Gross | 42.30 | 220 | 9,306.00 | | 9,306.00 |
| S. Grossman | 262.35 | 290 | 76,081.50 | $60.0 \times \$290 = \$1,740$ (2) | 74,341.50 |
| S. Hoffman | 1.00 | 250 | 250.00 | | 250.00 |
| M. Johnson | 12.00 | 115 | 1,380.00 | | 1,380.00 |
| J. Levy | .50 | 300 | 150.00 | | 150.00 |
| S. Rushd | 842.00 | 160 | 134,720.00 | $1.85 \times \$160 = \$\ 296$ (1) | 134,424.00 |
| B. Stumpf | 295.20 | 200 | 59,040.00 | | 59,040.00 |
| Paralegal | | | | | |
| V. Budzik | 26.50 | 60 | 1,590.00 | | 1,590.00 |
| V. Eng | 430.50 | 60 | 25,830.00 | | 25,830.00 |
| | | | $318,695.00 | | $316,659.00 |
| | | | | Total Lodestar | |
| | | | | 1983–1989 | $734,376.50 |

1. Uncorroborated telephone time
2. Duplicative time at deposition

Greenfield
1983–1985

| Attorney | Requested Hours | Requested Hourly Rate | Recommended Hourly Rate | Subtotal | Adjustments | Total |
|---|---|---|---|---|---|---|
| H. Greenfield | 586.00 | $300 | $250 | $146,500.00 | $120.25 \times 250 = \$30,062.50$ (2)<br>$40.20 \times 250 = \$10,050.00$ (3)<br>$28.10 \times 250 = \$\ 7,025.00$ (4)<br>$60.00 \times 250 = \$15,000.00$ (1)<br>$4.00 \times 250 = \$\ 1,000.00$ (5)<br>$(+\ 4.00 \times 250 = \$\ 1,000.00)$ (6)<br>$(+\ 8.06 \times 250 = \$\ 2,015.00)$ (7)<br>————<br>$\$60,122.50$ | $86,377.50 |

1986–1989

| Attorney | | | | | | |
|---|---|---|---|---|---|---|
| H. Greenfield | 252.00 | $375 | $300 | $ 75,600.00 | $30.00 \times 300 = \$\ 9,000.00$ (1)<br>$80.00 \times 300 = \$24,000.00$ (2)<br>$56.06 \times 300 = \$16,818.00$ (4)<br>$(+\ 2.63 \times 300 = \$\ \ \ 789.00)$ (7)<br>————<br>$\$49,029.00$ | $ 26,571.00 |

| Paralegal | | | | | | |
|---|---|---|---|---|---|---|
| S. Barron | 22.75 | $ 60 | $ 60 | $ 1,365.00 | $22.75 \times 60 = \$\ 1,365.00$ (8)<br>————<br>$\$ 1,365.00$ | 0.00 |
| | | | | | | $112,948.50 |

1. Uncorroborated telephone time
2. Duplicative time at depositions
3. 80% reduction for attendance at deposition with minimal participation
4. Conferences with the Kronfeld family after 12/84 (excluding those relating to the deposition of Morris Kronfeld)
5. Time relating to billing matters
6. Unrecorded meeting corroborated by Pomerantz Levy
7. Elimination of double-counting under footnotes 1, 2 and 4, above
8. Unnecessary presence at deposition

---

## III. *Multipliers*

Plaintiff has requested that the lodestar figure computed here be adjusted upward to compensate counsel for the risk of litigation, the benefit conferred upon the class, the quality of the work performed, and the complexity of the case. Plaintiff's Memorandum at 7–11. Additionally, plaintiff has suggested that the lodestar be adjusted upward in order to satisfy various "public policy considerations." Plaintiff's Memorandum at 11–14. The discretion of the court to make such adjustments is not as unfettered as plaintiff suggests.

*Limitation on multipliers.* In recent years, the Supreme Court has severely restricted adjustments, or multipliers, to the lodestar in cases in which fee awards are made pursuant to statutory authorization. In *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), a case involving the award of attorneys' fees under 42 U.S.C. § 1988, the Court rejected adjustments to the lodestar based on the complexity or novelty of the issues litigated. *Id.* at 898–99, 104 S.Ct. at 1548–49. Moreover, the Court cautioned against multipliers based on the "quality of representation," or acknowledgement of the "results obtained," noting that these factors are generally reflected in the reasonable hourly rate component of the lodestar. *Id.* at 899–900, 104 S.Ct. at 1549–50. The Court held that upward adjustments to the lodestar based on the "quality of representation"

would be justified "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" *Id.* at 899, 104 S.Ct. at 1549. *See also Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. [I]n some cases of *exceptional* success an enhanced award may be justified.") (emphasis added). As to multipliers based on the "results obtained," the Court concluded that such considerations "generally will be subsumed within other factors used to calculate a reasonable fee," and therefore, "normally should not provide an independent basis for increasing the fee award." 465 U.S. at 900, 104 S.Ct. at 1550.

The Court further refined the views expressed in *Blum* in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*"Delaware Valley I"*), a statutory fee case arising out of litigation involving the Clean Air Act, 42 U.S.C. §§ 7401 et seq., 7410, 7604(d). In *Delaware Valley I*, the Court overturned multipliers the District Court awarded to plaintiffs' counsel based on the "superior quality" of their work and the "outstanding result" obtained.[7] In capsulizing the *Blum* holding, the Court effectively extended its reach:

> [W]e specifically held in *Blum* that the novelty [and] complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation are presumably fully reflected in the lodestar amount and thus cannot serve as independent bases for increasing the basic fee award.

*Id.* at 565, 106 S.Ct. at 3088. In sum, the Court held that the lodestar formulation "leaves very little room for enhancing the

award based on [counsel's] post-engagement performance." *Id.*

The Supreme Court expressly reserved judgment in *Delaware Valley I* as to whether an upward adjustment to the lodestar was permissible to compensate counsel for assuming the "risk of loss" and subsequent nonpayment of fees. The issue was held over for reargument, 478 U.S. at 568, 106 S.Ct. at 3099–100, and the Court's opinion was rendered in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*"Delaware Valley II"*). In *Delaware Valley II*, the Court adopted much the same logic for "risk of loss" multipliers as was advanced for other multiplier rationales in *Blum* and *Delaware Valley I*. Four justices concluded that "risk of loss" multipliers, "should be reserved for exceptional cases where the need and justification for such enhancement are readily apparent and are supported by evidence in the record and specific findings by the courts." 483 U.S. at 728, 107 S.Ct. at 3088 (opinion of White, J.). In her concurrence in the judgment, Justice O'Connor expressed the view that "no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk the prevailing party would have faced substantial difficulties in finding counsel in the local or other relevant market." *Id.* at 731, 107 S.Ct. at 3089 (O'Connor, J., concurring).

The Supreme Court has not addressed whether the limitations on multipliers outlined in *Blum, Delaware Valley I* and *Delaware Valley II* apply equally to equitable fund cases. In the Submission of Pomerantz, Levy, Haudek, Block & Grossman to the Request for Information of the Special Master, plaintiff's co-counsel suggests that the limitations on multipliers established by those cases have no relevance here ("The appropriateness of a multiplier in this case is unaffected by statutory fee shifting decisions," Submission of Pomerantz, Levy at 7.). However, the Second Circuit has indicated that the statutory fee cases do have

---

7. Plaintiffs prevailed in an action to force the Commonwealth of Pennsylvania to observe a consent decree and implement a vehicle emissions inspection and maintenance program. *Id.* at 549, 106 S.Ct. at 3090.

relevance in the equitable fund context. In *Agent Orange I*, an equitable fund case in which fees were being awarded out of fund provided by the defendants to settle a class action, Judge Miner implicitly recognized the applicability of *Delaware Valley I* to "quality of representation" multipliers in equitable fund cases, noting that "[d]iscretion to adjust the lodestar figure upwards because of superior quality [of representation] ... is limited to exceptional situations and must be supported by 'specific evidence' and 'detailed findings' by the district court." *Id.* at 222 (dicta), *citing Delaware Valley I.* In *In re Agent Orange Product Liability Litigation*, 818 F.2d 226 (2d Cir.1987) ("*Agent Orange II*"), released on the same day as *Agent Orange I*, Judge Miner noted that in applying *Blum* and *Delaware Valley I*, "equitable fund cases may afford courts more leeway in enhancing the lodestar given the absence of any legislative directive." 818 F.2d at 234 n. 2. The court proceeded to apply the standards outlined by the Supreme Court in *Delaware Valley I* for rewarding a "quality of representation" multiplier, concluding in a "close case" that the multiplier was justified. *Id.* at 235.

*Agent Orange II* clearly suggests that although the courts in this circuit retain some discretion to award multipliers in equitable fund cases, the precepts of *Blum* and *Delaware Valley I* must be considered even there. The Second Circuit has not yet addressed the applicability of *Delaware Valley II* to "risk of loss" multipliers in the equitable fund context, though presumably the court will adopt a similar view. *See, e.g., Schwartz v. Novi Industri A/S*, 119

F.R.D. 359, 366–67 (S.D.N.Y.1988) (denying risk multiplier in equitable fund case, applying precepts of *Delaware II* and *Agent Orange II*).[8] In *Agent Orange II*, the court did recognize the need to consider carefully "risk of loss" multipliers, so as not to provide "an incentive for counsel to flood 'the courts with unmeritorious litigation.'" *Agent Orange II*, 818 F.2d at 236, *quoting McKinnon v. City of Berwyn*, 750 F.2d 1383, 1392 (7th Cir.1984). Therefore, the court held that "in adjudging whether to award a risk multiplier, [a court] should examine closely the nature of the action in order to determine whether, as a matter of public policy, it is the type of case worthy of judicial encouragement." *Id.* at 237.

■ *The Recommended Multiplier.* The Special Master does not believe that counsel have met their burden of showing by specific evidence that the quality of service rendered was not fully reflected in the hourly rates charged. Therefore, no upward adjustment for quality of representation is recommended. Similarly, the Special Master does not believe that the benefits conferred on the class or the complexity of the case can provide an independent basis for adjusting the lodestar, even in a common fund case. However, the Special Master does believe that counsel should receive an upward adjustment for risk, or contingency. As Judge Wood noted (Transcript of Hearing before Hon. Kimba M. Wood, March 31, 1989, at 16), "the riskiness is evidenced by Judge Weinfeld's grant of summary judgment." Even after the Second Circuit reversed the grant of

---

**8.** Notably, many district courts in the Second Circuit have not focused on *Agent Orange I, Agent Orange II* or *Delaware Valley II* in deciding recent equitable fund cases. In *Rievman v. Burlington Northern Railroad Co.*, 118 F.R.D. 29, 35 (S.D.N.Y.1987), a case involving the award of attorney's fees from a securities class action settlement fund, the court awarded a 3.26 multiplier to "quality counsel" engaged in "complex and risky litigation" who suffered "a substantial risk of obtaining no payment" for over two years of uncompensated service. The court made no reference to the *Agent Orange* or *Delaware Valley* decisions in considering the propriety of the multiplier. *See also In re Baldwin–United Corporation Litigation*, 1986 WL 12195

1988 U.S.Dist. LEXIS 6926 (S.D.N.Y. June 27, 1986) (2.0 multiplier); *Ross v. A.H. Robins*, 700 F.Supp. 682 (S.D.N.Y.1988) (1.8 multiplier granted); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 700 F.Supp. 208 (S.D.N.Y. 1988) (1.3 multiplier awarded); *Golden v. Shulman*, [1988–1989 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 94,060, 1988 WL 144718 (E.D.N.Y. 1988) (2.3 multiplier). Others have referred to *Agent Orange II*, but have nevertheless granted a multiplier. *See Weseley v. Spear, Leeds & Kellogg*, 711 F.Supp. 713 [1988–1989 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,403 (E.D.N.Y. 1989) (awarding 2.3 multiplier for contingency, risk and quality).

summary judgment, promulgating new standards of materiality for situations such as this, counsel's risk was far from over. That counsel could make the showing at trial required even under the new precepts was uncertain, as demonstrated in part by the defendants' failure to settle until the eve of trial. Given the increased flexibility afforded the court in equitable fund cases to award multipliers, the Special Master recommends a multiplier of 1.25 be applied to the lodestar figures computed above.

Were counsel to be awarded compensation at the hourly rates they specified for all hours they recorded, the requested lodestar would be $1,012,712.50, representing 29.8% of the settlement fund. When the lodestar is reduced as recommended above, the total is $847,325.00 or 24.9% of the settlement fund. After applying the recommended multiplier to the lodestar, attorney's fees in this litigation would total $1,059,156.26. This total is approximately 31.1% of the settlement fund, well within the acceptable range of 20%—50% noted in *Rievman v. Burlington Northern Railroad Co.*, 118 F.R.D. 29, 35 (S.D.N.Y.1987).

### IV. *Expenses*

#### A. Pomerantz Levy

Pomerantz Levy is claiming $138,457.17 in expenses (after giving effect to a reduction of $38.94 as described in Affidavit of Shaheen Rushd in Support of Submission of Pomerantz Levy Haudek Block & Grossman to Special Master Bartell's Request for Information). The major expense categories are expert fees ($65,559.09), reproduction costs ($19,131.20), court reporter ($11,452.35), computer research ($10,758.49), and overtime ($7,807.72). The Special Master has reviewed the documentation submitted for these expenses and believes that, although they are generally reasonable, the following items are insufficiently documented and should be disallowed:

1. Items billed as "American Express":

| 1985 | |
| --- | --- |
| 6/19 | $ 72.60 |
| 9/26 | 36.45 |
| 12/18 | 165.37 |

| 1986 | |
| --- | --- |
| 7/16 | $ 134.51 |
| 8/11 | 40.07 |

| 1987 | |
| --- | --- |
| 11/18 | $ 37.00 |

| 1988 | |
| --- | --- |
| 3/30 | $ 36.00 |
| 4/11 | 97.54 |
| 4/27 | 37.77 |
| 7/27 | 48.22 |
| 9/12 | 35.55 |
| 10/19 | 465.70 |
| 11/16 | 139.36 |
| Total | $1,346.14 |

Although Pomerantz Levy was given the opportunity to provide supporting documentation with respect to these charges, the documentation submitted in Exhibit I to Affidavit of Shaheen Rushd in Response to the Special Master's Draft Report Regarding Counsel Fees and Expenses (the "Draft Report Affidavit") included only one charge slip bearing an amount specified above (a charge by Bruce Stumpf in the amount of $37.77), and that slip gave no indication of the date or the matter. Indeed, many of the slips indicated that the charges were attributable to other cases. The Special Master finds this back-up insufficient, and recommends that these charges be disallowed.

2. Other items insufficiently documented:

| 7/12/84 | $28.18 | "Lunch with Kronfeld" |
| --- | --- | --- |

There was no equivalent time entry on this day and, although the Special Master asked for further documentation, none was provided.

| 9/11/85 | 48.00 | BPB |
| --- | --- | --- |

The supporting documentation in Exhibit K to the Draft Report Affidavit showed a charge for "Digest of Fingerhut's Deposition 4/7/83". This charge does not appear to be related to this case, even temporally, and should be disallowed.

| Total | $76.18 |
| --- | --- |

The total deduction from Pomerantz Levy's requested expenses is $1,422.32.

## B. Greenfield

Greenfield requests an award of $6,563.77 in expenses, and $10,027.00 for the plaintiff individually. The Special Master recommends that the recovery be reduced to $3,012.92 for Greenfield and $3,627.50 for Mr. Kronfeld.

Although invited to do so, Mr. Greenfield has submitted no documentation at all to corroborate the claimed expenses, other than the two telephone bills referred to in note 2 above, totalling $17.79. Although the failure to submit such documentation would justify denial of all unsubstantiated expenses, the Special Master instead recommends the following reductions for undocumented expenses: 65% of the $3,575.40 claimed for "Travel-transportation and meals", which is presumably related to depositions ($2,324.01) (this reflects the overall percentage reduction for time spent on deposition-related activities); 75% of the $582.10 for "long distance and overseas phone calls" ($436.58) (this reflects the overall reduction for unexplained time spent in communicating with the Kronfelds); 65% of the $446.55 for "Local Transportation, including Kronfelds' trips to law office" ($290.26); and all of the $500 labelled "Miscellaneous".

Greenfield has also submitted a request for Joel Kronfeld's expenses incurred during the course of litigation totalling $10,027.00. Of this amount, $2,010.00 was attributable to expenses incurred in connection with Mr. Kronfeld's deposition in New York, but not compensated by the defendants as required by Judge Weinfeld, 104 F.R.D. 50, 55 (1984). The Special Master recommends that Mr. Kronfeld be fully reimbursed for those expenses. Kronfeld claims an additional $1,547.00 in connection with travel to New York to attend the trial (which never occurred because of the settlement). Greenfield has made no showing that the presence of Mr. Kronfeld was compulsory. Generally, the voluntary attendance of a plaintiff at trial is not compensable. *See* S.D.N.Y. Rule 11(c)(3) ("No party to the action may receive witness fees or subsistence"). The Special Master recommends that these expenses be denied.

The remaining $6,470.00 in expenses, for telephone calls and other correspondence, should be reimbursed at the same rate for which Greenfield's communications with Mr. Kronfeld is deemed compensable. The Special Master has recommended that this be 25% of the requested amount ($1,617.50). This results in total reimbursement to Mr. Kronfeld of $3,627.50.

## V. *Fee-sharing Agreement*

Having determined a recommended award of reasonable attorneys' fees, the Special Master has considered the appropriateness of the division of fees pursuant to a fee-sharing agreement entered into by counsel representing the class. Because the recommended award of attorneys' fees to each counsel calculated by the Special Master differs significantly from the allocation sought pursuant to counsel's fee-sharing arrangement, the Special Master must recommend that the Court deny enforcement of counsel's internal agreement.

Division of attorneys' fees is governed by the Code of Professional Responsibility. Disciplinary Rule 2–107(A) states:

(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:

(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

(2) The division is made *in proportion to the services performed and responsibility assumed by each.*

(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.

(Emphasis supplied.)

In deciding whether to approve a consensual attorney fee-sharing arrangement to be paid out of a common fund class action settlement, the Court has an obligation under Rule 23(e) to protect the rights of class members. The Court is authorized to fulfill this obligation by governing and supervising the ethical conduct

of attorneys as provided in the Code of Professional Responsibility.[9]

Futhermore, the Court may refuse to recognize an attorneys' fee-sharing agreement if it does not provide for an equitable division of fees in accordance with the Disciplinary Rules or another substantive requirement governing conditions of compensation.[10]

As noted above, the Second Circuit determines the appropriateness of a division of legal fees among lawyers to be paid out of a common fund class settlement by utilizing the lodestar formula. The court protects the interest of the class by "tying fees to the actual effort made by the attorney to benefit the class," *Agent Orange I,* 818 F.2d 216, 222 (2d Cir.1987) (quoting *Grinnell II,* 560 F.2d at 1099). Although, as Mr. Greenfield noted in his Memorandum of Law re: Agreements Allocating Attorneys' Fees Among Co–Counsel, at 2–3, counsel need not "follow, line by line, the lodestar formula in arriving at an agreement as to fee distribution, ... the

distribution of fees must bear some relation to the services rendered". *Agent Orange I,* 818 F.2d 216, 223 (2d Cir.1987). To the extent that counsel's fee-sharing agreement differs significantly from the lodestar or from the amount that the court determines is equitable after adjusting each attorney's lodestar, the court may refuse to enforce the attorney's arrangement.

In this case co-counsel entered into and informed the Court of an internal fee-sharing agreement whereby Greenfield was to receive one-third and Pomerantz Levy was to receive two-thirds of the fund established by the court to pay attorneys' fees. Pomerantz Levy's extensive billing records indicate that it assumed principal responsibility for prosecuting this case on behalf of the class members. Greenfield participated in teleconferences, preparation of depositions and hearings, and had an active role in negotiating a settlement. Nevertheless, upon a thorough review of the record, the Special Master has found that Greenfield's expenditures combined with his contribution of services and assumption of re-

**9.** *See In re Agent Orange Product Liability Litigation,* 818 F.2d 216, 222 (2d Cir.1987) (in fulfilling their role as protector of class members, "courts should look to various codes of ethics as guidelines for judging the conduct of counsel"). *See also Stissi v. Interstate & Ocean Transport Co. of Philadelphia,* 814 F.2d 848, 851–852 (2d Cir.1987) (court upholds attorneys' fee-sharing agreement in wrongful death action upon scrutiny under DR 2–107); *General Motors Corp. v. City of New York,* 501 F.2d 639, 643 n. 11 (2d Cir.1974) ("Although ... no statutory authority undergirds judicial enforcement of the Code, the Courts' inherent power to assure compliance with these prophylactic rules of ethical conduct has not been questioned at any stage of these proceedings."); *In re Corn Derivatives Antitrust Litigation,* 748 F.2d 157, 160, 166 (3d Cir.1984), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985) (federal court has inherent power to discipline attorneys practicing before it); *Prandini v. National Tea Co.,* 557 F.2d 1015, 1019 (3rd Cir.1977) (applying bar association disciplinary rule 2–107 to fee allocation agreement); *Matter of Silverberg,* 75 A.D.2d 817, 427 N.Y.S.2d 480 (2d Dept.1980) ("Public policy requires that violations of the rules of professional conduct ... come before the scrutiny of the court.").

**10.** *See In re Agent Orange Product Liability Litigation,* 818 F.2d 226 (2d Cir.1987) (Court refused to enforce a consensual fee-sharing agreement that provided for three-fold return to at-

torneys who supplied funds for litigation expenses while concurrently decreasing award to attorney who only performed legal services for benefit of class); *In re Futuronics Corp.,* 655 F.2d 463 (2d Cir.1981), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982) (trial court's denial of over $1 million in fees, to which firms were otherwise entitled, because of impermissible fee-sharing agreement in violation of bankruptcy rules was within trial court's discretion); *Prandini v. National Tea Co.,* 557 F.2d 1015, 1019 (3d Cir.1977) (fee-sharing agreement between co-counsel, if in violation of Code, disregarded in dividing fees in class action suit); *Lewis v. Teleprompter Corp.,* 88 F.R.D. 11 (S.D.N.Y.1980) (impermissible fee-sharing agreement between lead counsel and other lawyers representing class members denied effect, and lead counsel penalized by reduction in fee); *Jones v. Amalgamated Warbasse Houses, Inc.,* 721 F.2d 881, 884 (2d Cir.1983), *cert. denied,* 466 U.S. 944, 104 S.Ct. 1929, 80 L.Ed.2d 474 (1984) ("If the court finds good reason to do so, it may reject an agreement as to attorney's fees just as it may reject an agreement as to the substantive claims."); *Rievman v. Burlington Northern Railroad Co.,* 118 F.R.D. 29, 35 n. 14 (S.D.N.Y.1987) (court found no basis for awarding counsel who contributed 18.78% to joint lodestar amount, either more or less than his share).

sponsibility in this litigation for the benefit of the members of the class amounted to significantly less than one-third of the over-all effort and expenditure provided. Under these circumstances, the fee-sharing agreement does not bear any relation to the services performed, and therefore does not comply with DR 2–107 and should not be enforced.

For the reasons stated herein the Special Master recommends that the Court deny enforcement of counsel's fee-sharing agreement and compensate counsel in accordance with the Special Master's calculations of each attorney's lodestar, as adjusted, as provided above, together with the expenses described herein. The recommended award is as follows:

Pomerantz Levy

| Lodestar | Multiplier | Fee Award | Expenses | Total |
| --- | --- | --- | --- | --- |
| $734,376.50 | 1.25 | $ 917,970.63 | $137,034.85 | $1,055,005.48 |

Greenfield

| Lodestar | Multiplier | Fee Award | Expenses | Total |
| --- | --- | --- | --- | --- |
| $112,948.50 | 1.25 | $ 141,185.63 | $ 3,012.92 | $ 144,198.55 |

Total

| Lodestar | | Fee Award | Expenses | Total |
| --- | --- | --- | --- | --- |
| $847,325.00 | | $1,059,156.26 | $140,047.77 | $1,199,204.03 [11] |

/s/ Laura B. Bartell
Laura B. Bartell
Special Master

Dated:
September 6, 1989

APPENDIX A
DATES UPON WHICH POMERANTZ LEVY INDICATES CONTACT
WITH GREENFIELD FOR WHICH GREENFIELD
HAS NO SIMILAR ENTRY.

1984
| | |
| --- | --- |
| 3/2 | (MIG) |
| 4/5 | (MIG) |
| 4/20 | (MIG) |
| 5/21 | (MIG) |
| 5/29 | (MIG) |
| 10/1 | (MIG) |
| 12/14 | (MIG) |

1985
| | |
| --- | --- |
| 2/6 | (MIG) |
| 3/19 | (MIG) |
| 6/25 | (SR) |
| 7/9 | (SR) |
| 7/11 | (SR) |
| 10/15 | (SR) |
| 10/22 | (SR) |
| 10/29 | (SR) |

1986
| | |
| --- | --- |
| 5/12 | (SR) |

11. The total recommended award exceeds by $39,204.03 the $1,160,000 aggregate of the proposed fees ($985,000) and expenses ($175,000) specified in the notice to the class of the proposed settlement. Had the award been in the amount requested, the fund available to satisfy class claims would have been $2,240,000 (plus accrued interest on $3,400,000). Giving effect to the recommended award, but disregarding the accrued interest on the fund, the available fund would be $2,200,795.97, a 1.75% variation from the previous figure of $2,240,000, certainly not a material difference. Even after taking into account the anticipated fees of the Special Master, the impact on the fund available to satisfy claims should be less than 5%.

$\dfrac{1988}{}$

7/28 (SR)

## APPENDIX B
### GREENFIELD–KRONFELD CONTACTS
### (AFTER 1984)

ONLY ACTIVITY RECORDED

| | |
|---|---|
| 3/14/85 | 1.00 |
| 5/31/85 | 1.00 |
| 6/10/85 | .25 |
| 6/11/85 | 4.00 |
| 6/18/85 | .50 |
| 8/21/85 | .50 |
| 9/01/85 | .25 |
| 9/09/85 | .25 |
| 9/10/85 | 4.75 |
| 10/09/85 | 2.25 |
| 10/28/85 | .25 |
| 12/20/85 | 2.75 |
| | |
| 1/06/86 | .25 |
| 1/09/86 | .50 |
| 1/23/86 | .25 |
| 3/05/86 | .25 |
| 4/03/86 | 2.50 |
| 4/11/86 | .25 |
| 4/15/86 | .25 |
| 5/26/86 | .25 |
| 7/25/86 | .25 |
| 9/04/86 | .25 |
| 12/08/86 | .25 |
| | |
| 4/09/87 | .25 |
| 6/03/87 | .25 |
| 6/24/87 | .25 |
| 7/05/87 | .25 |
| 10/21/87 | .25 |
| 11/07/87 | 1.00 |
| 12/22/87 | 3.00 |
| 12/28/87 | .25 |
| | |
| 1/08/88 | .50 |
| 4/03/88 | .25 |
| 5/25/88 | .50 |
| 6/17/88 | 1.00 |
| 8/22/88 | .50 |
| 8/29/88 | .25 |
| 10/09/88 | 1.50 |
| 10/14/89 | 4.25 |
| 10/15/88 | 2.00 |
| 10/16/88 | .50 |
| 11/22/88 | .50 |
| 12/25/88 | .50 |
| | |
| 2/08/89 | .50 |
| 2/15/89 | 3.25 |
| | 44.50 hours |

## ONE OF SEVERAL ACTIVITIES RECORDED

| | |
|---|---|
| 2/25/85 | 1/05/88 |
| 3/27/85 | 1/13/88 |
| 5/16/85 | 3/09/88 |
| 6/03/85 | 4/27/88 |
| 6/17/85 | 5/18/88 |
| 8/21/85 | 6/09/88 |
| 8/27/85 | 6/09/88 |
| 8/30/85 | 6/10/88 |
| 9/03/85 | 6/15/88 |
| 9/05/85 | 6/16/88 |
| 9/06/85 | 8/05/88 |
| 9/09/85 | 8/30/88 |
| 9/12/85 | 9/06/88 |
| 9/24/85 | 9/19/88 |
| 10/01/85 | 9/27/88 |
| 10/30/85 | 9/29/88 |
| 11/14/85 | 10/03/88 |
| 11/15/85 | 10/05/88 |
| 11/20/85 | 10/06/88 |
| | 10/10/88 |
| 1/23/86 | 10/11/88 |
| 1/27/86 | 11/02/88 |
| 5/14/86 | 11/02/88 |
| 6/13/86 | 11/03/88 |
| 6/25/86 | 11/09/88 |
| 7/16/86 | 12/15/88 |
| 8/01/86 | 12/19/88 |
| 8/18/86 | 12/20/88 |
| 9/19/86 | |
| | 1/05/89 |
| 1/23/87 | 1/11/89 |
| 11/02/87 | 1/12/89 |
| 11/05/87 | 1/16/89 |
| 12/17/87 | 1/13/89 |
| 12/30/87 | 1/17/89 |

(Total "Mixed–Activity" Days: 67)

## APPENDIX C

## DATES UPON WHICH GREENFIELD INDICATES CONTACT WITH POMERANTZ LEVY FOR WHICH POMERANTZ LEVY HAS NO SIMILAR ENTRY

**1983**

| | |
|---|---|
| 11/07 | 12/01 |
| 11/10 | 12/05 |
| 11/14 | 12/06 |
| 11/21 | 12/14 |
| 11/22 | 12/20 |
| 11/26 | 12/21 |
| 11/27 | 12/22 |
| 11/28 | 12/29 |
| 11/29 | 12/30 |
| 11/30 | |

**1984**

| | |
|---|---|
| 01/04 | 02/17 |
| 01/05 | 02/22 |
| 01/31 | 03/06 |
| 02/05 | 03/13 |
| 02/09 | 03/15 |

1984

| | |
|---|---|
| 03/22 | 08/27 |
| 03/30 | 09/05 |
| 04/09 | 09/08 |
| 04/17 | 09/10 |
| 04/27 | 09/12 |
| 05/01 | 09/15 |
| 05/22 | 09/17 |
| 05/23 | 09/19 |
| 06/06 | 09/21 |
| 06/07 | 10/10 |
| 06/20 | 10/11 |
| 06/21 | 10/12 |
| 06/23 | 10/16 |
| 06/27 | 10/18 |
| 06/28 | 10/23 |
| 07/05 | 11/02 |
| 07/09 | 12/07 |
| 08/07 | 12/08 |
| 08/13 | 12/18 |
| 08/14 | 12/20 |
| 08/16 | 12/21 |
| 08/26 | 12/26 |

1985

| | |
|---|---|
| 01/08 | 06/04 |
| 01/09 | 06/07 |
| 01/11 | 06/21 |
| 01/14 | 06/24 |
| 01/16 | 06/28 |
| 01/28 | 07/18 |
| 01/30 | 07/31 |
| 01/31 | 08/12 |
| 02/05 | 08/16 |
| 02/07 | 08/19 |
| 02/12 | 08/21 |
| 02/20 | 08/23 |
| 02/21 | 08/28 |
| 02/25 | 09/03 |
| 03/16 | 09/04 |
| 03/18 | 09/06 |
| 03/21 | 09/08 |
| 03/25 | 09/11 |
| 03/26 | 09/12 |
| 03/28 | 09/23 |
| 04/03 | 09/24 |
| 04/19 | 09/27 |
| 04/20 | 09/30 |
| 04/24 | 10/01 |
| 04/29 | 10/04 |
| 04/30 | 10/09 |
| 05/02 | 10/25 |
| 05/13 | 11/01 |
| 05/15 | 11/04 |
| 05/16 | 11/13 |
| 05/28 | 11/14 |
| 05/29 | 11/20 |
| 05/30 | 12/06 |
| 05/31 | |

| 1986 | | 04/09 |
|------|--|-------|
| 01/07 | | 04/10 |
| 01/10 | | 06/03 |
| 01/23 | | 08/18 |
| 01/27 | | 09/16 |
| 04/01 | | 09/19 |
| 04/03 | | |
| 04/04 | | |

1986
01/07
01/10
01/23
01/27
04/01
04/03
04/04

04/09
04/10
06/03
08/18
09/16
09/19

1987
01/23
11/02
11/05

1988
01/04
01/05
03/09
04/27
05/18
06/09
06/10
06/15
06/21
06/30
07/05
07/12
07/14
07/26
07/27
08/30

09/01
09/27
09/29
10/03
10/04
10/05
10/06
10/10
10/11
10/12
10/31
12/15
12/19
12/20
12/21

1989
01/04
01/11
01/12

## APPENDIX D

### TIME SPENT BY GREENFIELD ON DEPOSITION–RELATED MATTERS

#### Joel Kronfeld (June 26, 1984)

| | |
|-----------|-------|
| 01/03/84 | 1.00 |
| 01/04/84 | 1.00 |
| 01/05/84 | 2.00 |
| 01/12/84 | 2.25 |
| 02/05/84 | .50 |
| 03/06/84 | 3.75 |
| 05/01/84 | .25 |
| 05/20/84 | 1.75 |
| 05/22/84 | 2.25 |
| 05/23/84 | 2.00 |
| 06/05/84 | 2.00 |
| 06/06/84 | 1.00 |
| 06/07/84 | 1.25 |
| 06/18/84 | 2.50 |
| 06/19/84 | 2.50 |
| 06/27/84 | .50 |
| 07/09/84 | .50 |
| 08/05/84 | 4.00 |
| 08/08/84 | 4.00 |
| TOTAL | 35.00 |

Morris Kronfeld (February 8, 1985)

| | |
|---|---|
| 12/18/84 | .50 |
| 12/20/84 | .75 |
| 12/21/84 | 1.00 |
| 12/27/84 | 1.00 |
| 01/10/85 | 2.00 |
| 01/11/85 | 1.75 |
| 01/14/85 | 1.00 |
| 01/15/85 | .25 |
| 01/16/85 | 1.00 |
| 01/17/85 | 1.00 |
| 01/29/85 | 1.50 |
| 01/30/85 | 5.00 |
| 01/31/85 | .50 |
| 02/01/85 | 2.00 |
| 02/07/85 | 12.00 |
| 02/08/85 | 9.00 |
| 02/12/85 | .50 |
| TOTAL | 40.75 |

Thomas Mendell (May 10, 1985)

| | |
|---|---|
| 3/13/85 | .25 |
| 3/25/85 | .50 |
| 4/03/85 | .50 |
| 4/20/85 | .25 |
| 4/29/85 | 1.00 |
| 4/30/85 | 1.00 |
| 5/04/85 | 12.75 |
| 5/05/85 | 7.50 |
| 5/10/85 | 10.75 |
| 5/13/85 | .75 |
| 5/15/85 | .25 |
| 6/04/85 | .25 |
| 6/19/85 | .50 |
| 6/20/85 | 1.00 |
| 6/21/85 | 1.00 |
| 6/24/85 | .25 |
| 6/24/85 | .25 |
| 9/11/85 | 1.00 |
| Total: | 39.75 |

James Painter (May 23, 1985)

| | |
|---|---|
| 5/16/85 | .25 |
| 5/23/85 | 14.50 |
| 5/28/85 | .25 |
| 5/30/85 | .25 |
| 5/31/85 | 1.00 |
| 6/01/85 | 1.00 |
| 6/10/85 | .50 |
| Total: | 17.75 |

Lester Pollack (July 2, 1985)

| | |
|---|---|
| 6/25/85 | .50 |
| 6/28/85 | .75 |
| 7/02/85 | 5.75 |
| 7/04/85 | .25 |
| 7/08/85 | 1.00 |
| 7/10/85 | .25 |
| Total: | 8.50 |

Robert F. Cummings (July 19, 1985)

| | |
|---|---|
| 7/19/85 | 4.50 |
| 7/23/85 | 1.00 |
| Total: | 5.50 |

Mary Anne Casati (August 20, 1985)

| | |
|---|---|
| 8/16/85 | 1.00 |
| 8/19/85 | .25 |
| 8/19/85 | 5.00 |
| 8/19/85 | 11.50 |
| 8/21/85 | 1.00 |
| 8/23/85 | .25 |
| Total: | 19.00 |

L. Edwin Smart (September 18, 1985)

| | |
|---|---|
| 9/17/85 | 2.50 |
| 9/17/85 | 3.00 |
| 9/18/85 | 11.00 |
| 9/24/85 | .75 |
| Total: | 17.25 |

Joseph H. Gleberman (September 19, 1985)

| | |
|---|---|
| 9/09/85 | 5.00 |
| Total: | 5.00 |

Robert A. Peiser (September 30, 1985)

| | |
|---|---|
| 9/29/85 | 3.75 |
| 9/30/85 | 8.25 |
| 10/01/85 | 1.00 |
| Total: | 13.00 |

Ulrich V. Hoffman (October 3, 1985)

| | |
|---|---|
| 8/12/85 | 1.00 |
| 8/29/85 | 1.50 |
| 9/03/85 | .25 |
| 9/27/85 | .75 |
| 10/02/85 | 2.00 |
| 10/03/85 | 5.00 |
| 1/25/86 | 2.00 |
| Total: | 12.50 |

Randi Murray (October 7, 1985)

| | |
|---|---|
| 10/06/85 | 3.00 |
| 10/07/85 | 5.00 |
| Total: | 8.00 |

Roberts Brokaw (October 16, 1985)

| | |
|---|---|
| 10/04/85 | 1.00 |
| 10/15/85 | 3.00 |
| 10/16/85 | 4.00 |
| Total: | 8.00 |

Herbert Silverberg (October 24, 1985)

| | |
|---|---|
| 9/05/85 | .50 |
| 9/08/85 | .50 |
| 9/09/85 | .50 |
| 9/19/85 | 1.25 |
| 9/27/85 | .25 |
| 10/01/85 | 2.00 |
| 10/04/85 | 1.00 |
| 10/17/85 | 3.00 |
| 10/24/85 | 8.50 |
| 10/25/85 | .50 |
| 10/29/85 | 2.00 |
| 12/04/85 | 3.00 |
| 12/06/85 | 2.25 |
| Total: | 25.25 |

Carl Meyer (November 8, 1985)

| | |
|---|---|
| 11/08/85 | 4.75 |
| Total: | 4.75 |

John Mascotte (July 11, 1988)

| | |
|---|---|
| 6/21/88 | .25 |
| 6/30/88 | .25 |
| 7/05/88 | .25 |
| 7/08/88 | 1.00 |
| 7/10/88 | 13.00 |
| 7/10/88 | 8.00 |
| 7/11/88 | 4.00 |
| 7/11/88 | .75 |
| Total: | 27.50 |

Jack Valenti (July 28, 1988)

| | |
|---|---|
| 7/12/88 | 2.25 |
| 7/14/88 | 1.25 |
| 7/22/88 | .50 |
| 7/26/88 | 1.25 |
| 7/27/88 | 1.25 |
| 7/28/88 | 9.00 |
| 8/03/88 | 3.50 |
| Total: | 19.00 |

Lester Crown (August 4, 1988)

| | |
|---|---|
| 08/04/88 | 18.50 |
| Total: | 18.50 |

Patricia Stewart (August 17, 1988)

| | |
|---|---|
| 8/08/88 | 1.25 |
| 8/15/88 | 1.00 |
| 8/17/88 | 5.00 |
| 8/29/88 | .25 |
| Total: | 7.50 |

Colman Abbe (September 26, 1988)

| | |
|---|---|
| 9/14/88 | 1.00 |
| 9/26/88 | 7.00 |
| Total: | 8.00 |

Robert Stillman (October 7, 1988)

| | |
|---|---|
| 10/07/88 | 6.00 |
| Total: | 6.00 |

Miscellaneous Entries re: Depositions

| | | | |
|---|---|---|---|
| 5/02/85 | Telecon re: depositions | .50 | |
| 11/12/85 | Review Deps. | 8.00 | |
| 11/29/85 | Telephone conference with Schwartz re: deposition transcripts | .25 | |
| 6/16/88 | Various tasks | 3.50 | (7.00 × 50%: not all tasks are deposition related) |
| 8/30/88 | Telecon | 1.00 | |
| 9/01/88 | Telecon re: depositions | .50 | |
| 10/5/88 | Telecon re: depositions | 9.75 | |
| | Total: | 23.50 | |