Alan C. RIEVMAN, Walter Pistner, Liv Anspach, Irwin E. Garfield, as Trustee for B.G. Enterprises, Inc., Defined Benefit Pension Plan and Trust Dated 12/1/76, Geseg, Inc., and J. Allan Mactier, Plaintiffs,

v.

BURLINGTON NORTHERN RAILROAD COMPANY, Bankers Trust Company, and Citibank, N.A., Defendants.

No. 85 Civ. 3694 (RLC).

United States District Court, S.D. New York.

Nov. 25, 1987.

Lowey, Dannenberg & Knapp, P.C., Stephen Lowey, Richard Bemporad, New York City, for plaintiffs Liv Anspach and J. Allen Mactier; William Klein, II, Tenzer, Greenblatt, Fallon & Kaplan, New York City, of counsel.

Lawrence Heller, Weinberg, Zipser, Arbiter & Heller, Los Angeles, Cal., for plaintiffs Irwin E. Garfield and Geseg, Inc.; Joseph A. Rosenthal, Morris & Rosenthal, P.A. Wilmington, Del., of counsel.

Cravath, Swaine & Moore, New York City, for defendant Burlington Northern R. Co.; Robert D. Jóffe, Mark A. Sirota, of counsel.

Duker & Barrett, New York City, for defendant Burlington Northern R. Co.; David A. Barrett, of counsel.

Shearman & Sterling, New York City, for defendant Citibank, N.A.; Alexander C. Bancroft, David J. Mark, of counsel.

White & Case, New York City for defendant Bankers Trust Co.; Jeffrey Barist, Lawrence Fenster, Aldo A. Badini, of counsel.

Shea & Gould, New York City, for objector Metropolitan Acquisition Partners I, L.P.; Milton S. Gould, Arnold S. Jacobs, Kurt Hunciker, of counsel.

Marshall Beil, New York City, for objector Carolyn E. White Delli Bovi.

## OPINION

ROBERT L. CARTER, District Judge.

This matter is before the court on the parties' petition for approval of a class settlement pursuant to Rule 23(e), F.R. Civ.P. Plaintiffs, a class comprising the holders of bonds issued in 1896 by the predecessor of defendant Burlington Northern Railroad Company ("the Railroad"),[1] brought suit in 1985 to enjoin the Railroad from substituting other collateral for certain realty ("the Resource Properties") by which the bond mortgages are secured. The Railroad now proposes to make a one-time cash payment on each outstanding bond in return for the release of the Resource Properties. Objecting to the proposal are institutions holding some three percent of the outstanding indebtedness who claim to represent holders of an additional eighteen percent, as well as various individuals.

1. The court certified a class pursuant to Rule 23(b)(1)(A) & (b)(2), F.R.Civ.P. *Rievman v. Burlington Northern R. Co.,* 618 F.Supp. 592, 595 (S.D.N.Y.1985) (Carter, J.). Members of a class so certified may not elect to be excluded from the class. *Cf.* Rules 23(b)(3) & (c)(2), F.R.Civ.P.

The argument raised by some objectors, that the court may not bind them in this action, is without any basis in law. *See, e.g., Robertson v. National Basketball Assoc.,* 72 F.R.D. 64, 68 (S.D. N.Y.1976) (Carter, J.), *aff'd,* 556 F.2d 682 (2d Cir.1977).

## BACKGROUND

Two series of bonds are involved in this litigation. One series, issued pursuant to a mortgage and yielding four percent annual interest, will mature in 1997 ("the Prior Lien Bonds"). The other series, issued pursuant to a second mortgage on the same properties and yielding three percent, will mature in 2047 ("the General Lien Bonds"). Roughly $117.7 million par value of the Prior and General Lien Bonds (collectively, "the Bonds") are outstanding.

Among other collateral, several million acres of land and mineral rights in six Midwestern and Northwestern states secure the underlying mortgages. By virtue of the extensive natural resources they contain, these lands are referred to as the Resource Properties. While the current market value of the Resource Properties may be in the billions of dollars, the terms of the bond mortgages severely inhibit the sale and development of the Resource Properties. Nor do the mortgages provide for the withdrawal of excess collateral.

On June 21, 1985, this court preliminarily enjoined the Railroad from effecting agreements with the Bonds' trustees [2] ("the Letter Agreements") by which the Railroad would deposit United States securities in place of the Resource Properties and tender then-current market prices for all outstanding bonds. *Rievman v. Burlington Northern R. Co.*, 618 F.Supp. 592 (S.D. N.Y.1985) (Carter, J.) ("*Rievman I*"). The court found irreparable harm in that,

> [i]f the Letter Agreements are implemented, it will be difficult, if not impossible, to determine what price the bondholders and the Railroad would have finally agreed on in a buy-back to release the properties.

*Rievman I*, 618 F.Supp. at 597. The Railroad subsequently abandoned its deposit plan, but refrained from assuring the court that it would not attempt a similar transaction in the future. *Rievman v. Burlington Northern R. Co.*, 644 F.Supp. 168, 171 (S.D.N.Y.1986) (Carter, J.) ("*Rievman II*"). As a result, on plaintiffs' motion to make the injunction permanent, the court ruled, on September 5, 1986, that

> [w]e cannot issue an injunction absent a specific proposal to release the [Resource] [P]roperties.... However, we must protect plaintiffs' right to a judicial declaration of their rights prior to any defeasance.

*Rievman II, supra*, 644 F.Supp. at 172. The court similarly rejected the Railroad's argument that the case be dismissed as moot, *id.* at 171–72, and retained jurisdiction "to enable plaintiffs to contest ... any plan to release the Resource Properties." *Id.* at 172.

Following oral argument of appeals by the Railroad and one of the trustees from this court's September 5 order,[3] the parties engaged in negotiations which culminated in the announcement of a proposed agreement of settlement on April 3, 1987. Under the terms of the agreement, the Railroad has placed $35.5 million in escrow to earn interest pending distribution. Upon approval, the escrow balance (less an allowance for plaintiffs' attorneys' fees and litigation costs) would be paid out among the outstanding Bonds in an amount of $14.75 plus interest per $100 face amount of the Prior Lien Bonds, and $45.625 plus interest per $100 face amount of the General Lien Bonds. Outstanding bonds would remain in the hands of their holders, and continue to be secured by assets having a present value of approximately $778,400,000,[4] but not by the Resource Properties.

**2.** The trustees of the Prior Lien Bonds and the General Lien Bonds, Bankers Trust Company and Citibank, N.A., respectively, are the remaining parties defendant to this action.

**3.** A panel of the Court of Appeals heard argument on January 22, 1987. Pursuant to the proposed settlement agreement, the appeals were withdrawn without prejudice on April 28, 1987. *Rievman v. Burlington Northern R. Co.*, Nos. 86–7849, 7851, Stipulation and Order of Withdrawal of Appeal Without Prejudice (2d Cir. Apr. 27, 1987).

**4.** In connection with this proposal, both Moody's Investors Service and Standard & Poor's have advised the Railroad that they will maintain their present high ratings of the Bonds should the Resource Properties be released.

Notice of the proposed settlement was provided by mail to all registered bondholders and by publication in the Wall Street Journal and The Financial Times of London, pursuant to an order of the court dated May 5, 1987. The notice informed class members of their right to submit written objections and to appear in opposition at the Settlement Hearing, set down for July 15, 1987. In advance of the hearing, class counsel submitted affidavits and letters in support of the proposed settlement by holders of $62.393 million face value, or 53%, of the outstanding indebtedness. Several individual bondholders, representing undetermined holdings of at least $151,000 face value, or 0.13%,[5] expressed opposition, as did Metropolitan Acquisition Partners I, L.P. ("Metropolitan"). Metropolitan, a limited partnership formed ten days before the parties announced the proposed settlement agreement, objected on behalf of its $1.9 million par value and $2,185,000 in holdings by Alex. Brown & Co. and its customers. Metropolitan also claimed to hold written authorizations to oppose the settlement on behalf of the holders of $7,186,000 par value,[6] and oral authorization from the holders of another $9.6 million. Settlement Hearing, July 15, 1987, Tr. at 41. *But see* Aff't of O'Brien, July 30, 1987, ¶ 4 (claiming $20.8 million in additional authorizations, excluding Metropolitan's own holdings). Metropolitan's lack of candor in regard to the origin of these authorizations has raised doubts about their genuiness.[7]

## DISCUSSION

■ The proponents of a class settlement bear the burden, under Rule 23(e), F.R.Civ.P.,[8] of showing that the proposed agreement is fair, reasonable and adequate with respect to the absent class members. 2 H. Newberg, Newberg on Class Actions § 11.41 (2d ed. 1985); *see Galdi Securities Corp. v. Propp,* 87 F.R.D. 6, 10 (S.D.N.Y. 1979) (Lowe, J.); *Weiss v. Drew Nat'l Corp.* 465 F.Supp. 548, 551 (S.D.N.Y.1979) (Sweet, J.). To shift the burden to the objectors, the proponents must make an initial showing of fairness and reasonableness. *Wellman v. Dickinson,* 497 F.Supp. 824, 830 (S.D.N.Y.1980) (Carter, J.), *aff'd without opinion,* 647 F.2d 163 (2d Cir. 1981), *cert. denied sub nom. Dickinson v. SEC,* 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983); *Munsey Trust v. Sycor, Inc.,* 457 F.Supp. 924, 926–27 (S.D.N.Y. 1978) (MacMahon, J.); *Feder v. Harrington.* 58 F.R.D. 171, 174–75 (S.D.N.Y.1972) (MacMahon, J.), To do so, the proponents must demonstrate that the "relative interest" of the objectant parties is "small". *See Wellman, supra,* 497 F.Supp. at 830. The proponents, while they have raised serious questions about the true numerical strength of the opposition, have not made a clear showing on this score.

■ The court must measure the fairness, reasonableness and adequacy of the proposal against a number of factors. Those relevant to the settlement of an action seeking purely injunctive relief are the

---

5. The court is in receipt of letters in opposition to the proposed settlement from the following individuals: Lester Schwartz and Russel Bilinski (holders of $150,000 face value of the Bonds), Statement dated June 26, 1987; Howard and Janet Smith (holdings undisclosed), Letter dated June 25, 1987; Richard and Helen Welsh (holdings undisclosed), Letter dated June 25, 1987; John A. Hinlicky (holdings undisclosed), Letter dated June 24, 1987; and Carolyn F. White Delli Bovi (holder of $1,000 face value of the Bonds), Statement dated June 29, 1987. The court denied Delli Bovi's June 26, 1987 motion to intervene on July 15, 1987, at the Settlement Hearing. Tr. at 2.

6. Many of the written authorizations are illegible as to the face value of the authorizor's holdings.

7. Metropolitan solicited these authorizations, after the proposed compromise was announced, apparently as part of a larger agreement with the solicited bondholders by which it essentially received a one-year option to buy their Bonds. *See* Offering Memorandum and Agreement to Sell, Aff't of Lowey, July 11, 1987, Ex. 7. Metropolitan failed to disclose this agreement to the court, both at the Settlement Hearing and in its written submissions.

8. Rule 23(e) states:

A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

reaction of class members to the settlement, the stage of the proceedings and the amount of discovery completed, the terms of the settlement, the costs and risks of continued litigation and the likelihood of recovery. *See Plummer v. Chemical Bank,* 91 F.R.D. 434, 438 (S.D.N.Y.1981) (Conner, J.), *aff'd* 668 F.2d 654 (2d Cir. 1982); *City of Detroit v. Grinnell Corp.,* 356 F.Supp. 1380 (S.D.N.Y.1972) (Metzner, J.), *aff'd in part and rev'd in part,* 495 F.2d 448, 463 (2d Cir.1974). The "most significant" of these factors is "the strength of plaintiffs' case balanced against the settlement offer." *In re Traffic Executive Assoc.—Eastern Railroads,* 627 F.2d 631, 633 (2d Cir.1980); *accord Plummer v. Chemical Bank,* 668 F.2d 654, 660 (2d Cir.1982); *see also Protective Committee for Independent Stockholders v. Anderson,* 390 U.S. 414, 424–25, 88 S.Ct. 1157, 1163–64, 20 L.Ed.2d 1 (1968). It is with these latter considerations, then—the terms of the compromise and the costs and likely rewards of further litigation—, that the court begins its analysis.

The critical fact that must be appreciated in assessing the risks and benefits of litigating this action to a conclusion is that this court cannot award monetary damages to the class. Apart from the fact that plaintiffs have sought purely injunctive relief and not damages in their complaint, the bondholders "do not have any direct interest in the [Resource Properties]," but have only a lien on them. *Rievman I, supra,* 618 F.Supp. at 596. Should defendants be permanently enjoined from prematurely releasing the Resource Properties from the lien—the most favorable relief plaintiffs could possibly obtain—that lien would cease to confer any "hold-up" value on the bonds. In short, only by settling can plaintiffs realize their goals. Litigation *per se* holds out no rewards, likely or remote.

On the other hand, while this court has neither "the right [n]or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute," *City of Detroit v. Grinnell,*

495 F.2d 448, 456 (2d Cir.1974), it must take account of the "complexity, difficulty and uncertainty" of those issues. *Wellman, supra,* 497 F.Supp. at 831. In granting the motion for a preliminary injunction, the court noted that "this is a difficult, complex case," *Rievman I, supra,* 618 F.Supp. at 601, and "nothing adduced in relation to [the] motion [for permanent injunctive relief] diminishe[d] our uncertainty." *Rievman II, supra,* 644 F.Supp. at 172.[9] The conclusion is inescapable that the risks of continued litigation far outweigh the potential rewards.

When the terms of the compromise are set against the expected results of litigation, they appear eminently reasonable. The proposed settlement agreement, without impairing the security of the bonds as debt instruments, provides for an immediate cash payment to the bondholders, a result which no amount of litigation could produce.

Metropolitan and several of the individual objectors, however, challenge the *adequacy* of the amount offered in settlement. Metropolitan urges that the adequacy of the $35.5 million fund must be determined in comparison to the value that the Railroad is to realize in return, which may amount to billions of dollars. This objection misses the mark. The bondholders' lien does not entitle them to an equitable share of the worth of the Resource Properties, but simply permits them to insist on receiving the "hold-up" premium to which that lien has given rise.

As this court noted earlier, there is "no objective way" to value that "hold-up" premium except through negotiation in light of the market for the Bonds. *Rievman I, supra,* 618 F.Supp. at 597. In the court's view, the parties have evaluated the "hold-up" premium legitimately. The parties first agreed to utilize the market values of the Bonds as of the first week of February 1987, as the basis of their calculations. Aff't of Joffe, July 13, 1987, ¶ 24, n. 7.

**9.** The Court of Appeals apparently found the issues of law equally difficult and uncertain. Although the Court heard argument on January 22, 1987, no decision had been rendered when the appeals were withdrawn more than three months later, on April 27.

The Prior Lien Bonds brought an average of $79.20 per $100 face value that week, while the General Lien Bonds averaged $70.30. *Id.*, ¶ 24. The parties' experts concurred, moreover, in their calculations of the values of the Bonds as debt instruments alone; absent any "hold-up" premium, the Prior Lien Bonds would have traded at about $74.50, and the General Lien Bonds at about $36.75 as of February 1987. Aff't of Runde, July 9, 1987, ¶ 5; Aff't of Lamle, July 10, 1987, ¶¶ 11–12.

Based on these figures, the Railroad offered to pay the difference between the then-current market value of the Bonds and their estimated market value as debt instruments alone, a sum totalling $20 million. Plaintiffs' counsel, claiming that the market was undervaluing the "hold-up" premium, suggested that the Prior Lien Bonds were more accurately valued at $90 and the General Lien Bonds at $85 each, and sought the difference between those amounts and the estimated value of the Bonds as debt instruments alone, for a total of $39 million. The parties finally settled on $35.5 million.

While Metropolitan offers alternative assessments of the "hold-up" value of the Bonds, none of these shows the proposed sum to be inadequate. Indeed, even accepting the view of Metropolitan's expert that, as of June 1987, the value of the Prior and General Lien Bonds as debt instruments alone was only $67 and $30, respectively, Aff't of O'Brien, June 30, 1987, ¶ 17, the total "hold-up" value of the Bonds would amount to less than $28 million, or well under eighty percent of the proposed principal payment.[10]

The remaining factors pose no barrier to the approval of this settlement agreement. Ample discovery was conducted, albeit on an expedited basis, prior to the hearing on plaintiffs' motion for a preliminary injunction, and the proceedings are now at an advanced stage. Finally, the opposition of the holders of even a majority of the outstanding bonds

> cannot serve as an automatic bar to a settlement that a district judge, after weighing all the strengths and weaknesses of a case and the risks of litigation, determines to be manifestly reasonable.

*TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 462 (2d Cir.1982) (settlement properly approved over opposition by 54–58% of outstanding shares); *accord Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 803 (3d Cir.), *cert. denied*, 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974) (20% of class opposed). The instant compromise has the support of at least 53% of the outstanding Bonds, with possibly fewer than 5% opposed.[11] Even if those additional bondholders are included that Metropolitan claims to be authorized to represent,[12] the objectors have failed to persuade the court that the proposal is anything but fair, reasonable and adequate. The settlement agreement will accordingly be approved.

Plaintiffs' counsel also petition the court for a joint award, from the common fund, of attorneys' fees in the amount of $3,388,243 and of expenses in the amount of $231,669.17. Actual billing time by the four firms that represented the class in this action came to 4,437.9 hours, for a lodestar

---

10. It should also be noted that the objection raised at the July 15, 1987 hearing, on behalf of plaintiffs Garfield and Geseg, Inc., that the proposal would injure the class by precipitating a drop in the market value of the Bonds, Tr. at 38, is not persuasive. A decree permanently enjoining the substitution of collateral, which those same plaintiffs sought earlier in this litigation, would have produced an identical effect, with none of the compensating benefits of this proposed compromise.

11. The holdings of Metropolitan, Alex. Brown, and the five individual objectors amount (inso-

far as the court can determine) to 3.6% of the outstanding indebtedness.

12. Because Metropolitan has failed to disclose to the court the terms of its agreements with the bondholders it claims to represent, the court cannot say with certainty that those bondholders truly object to the proposed compromise as unfair, unreasonable or inadequate. It appears from the information provided by plaintiffs' counsel, indeed, that those bondholders simply have made a cost-free wager that Metropolitan can secure a larger payment fund in which they might share.

amount of $1,039,739.25.[13] The firms seek to apply a multiplier of 3.26 to the lodestar amount. The fee application is unopposed.

The multiplier sought is well within the typical range awarded to quality counsel for this sort of complex and risky litigation. In recent years, multipliers of between 3 and 4.5 have been common. *See In re Warner Communications Securities Litigation*, 618 F.Supp. 735, 749 (S.D.N.Y.1985) (Keenan, J.) (citing nine cases), *aff'd*, 798 F.2d 35 (2d Cir.1986). Having previously emphasized the difficulty and complexity of the issues herein, the court need only note that counsel suffered a substantial risk of obtaining no payment for their two and one-half years of uncompensated effort.

The benefits that counsel obtained for the class are also substantial. Had no action been filed, the class would have been essentially compelled to accept a tender of $53.50 per Prior Lien Bond and $39 per General Lien Bond. *Rievman I, supra*, 618 F.Supp. at 595. Instead, the class now will receive at least $14.75 and $45.62 respectively, per Bond, in addition to retaining Bonds which will subsequently be valued at $67–75 and $30–37, respectively, per Bond. The total benefit obtained for the class is thus worth some $45 million dollars, of which the requested fee constitutes only 7%.

Viewed as a percentage of the total class recovery, attorneys' fees are typically considered reasonable if they amount to twenty to fifty percent of the settlement fund. *Warner, supra*, 618 F.Supp. at 749–50 (citing nineteen cases); *see Friedlander v. Barnes*, [1986–87 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 92,754 (Carter, J.) [available on WESTLAW, 1986 WL 5517] (thirty percent "not out of line"). *See also Blum v. Stenson*, 465 U.S. 886, 901 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891

(1984) (dicta). There can be no doubt that as modest a percentage as 7% is reasonable.

The class settlement is approved. Each of plaintiffs' counsel will share in the award of joint attorneys' fees and disbursements in proportion to the amount of their contribution to the joint lodestar figure [14] and the disbursement figure, respectively.

IT IS SO ORDERED.

---

13. The firm of Lowey, Dannenberg & Knapp, lead counsel for the class, expended time valued at $569,926.75. Bemporad Aff't at ¶ 11. Weinberg, Zipser, Arbiter, Heller & Quinn claims $195,350. Levy Aff't, Ex. 1. Tenzer, Greenblatt, Fallon & Kaplan asks for $271,500.00. Klein Aff't at 18. Additional representation, in the sum of $2,962.50, was provided by Morris & Rosenthal, P.A. Aff't of Monhait at ¶ 4.

14. The court sees no basis for awarding Weinberg, Zipser, which contributed 18.78% to the joint lodestar amount, either the one-fourth share that it has sought, or the 11.5% share that Lowey, Dannenberg has offered. *See* Letter of Lawrence H. Heller to the Court, dated Aug. 27, 1987; Letter of Stephen Lowey to the Court, dated Sept. 1, 1987. Weinberg, Zipser shall receive 18.78% of the joint fee award.