**In re BOLAR PHARMACEUTICAL COMPANY, INCORPORATED, SECURITIES LITIGATION.**

**Donfred BERG, on Behalf of Himself and all Others Similarly Situated; Robert Kosow, Plaintiffs,**

**Bolar Pharmaceutical Company, Incorporated; Robert Shulman; Larry Raisefield; Jack Rivers; Herman Antonoff; Michael Fedidu; Sidney Stuchin, Defendants,**

**Daniel L. Berger, Esq., Appellee,**

**v.**

**Myron C. GACKENBACH, Objector–Appellant.**

**No. CV 89–1726.**

United States District Court, E.D. New York.

Sept. 1, 1992.

Bernstein, Litowitz, Berger & Grossman by Daniel L. Berger, New York City, for plaintiffs.

Pfaltz & Wollen, John Kennedy Cooper, Summit, N.J., for objector-appellant.

Myron C. Gackenbach, pro se.

## MEMORANDUM AND ORDER

LEONARD D. WEXLER, District Judge.

In the above-referenced action, here on remand from the Court of Appeals, plaintiff class' counsel ("counsel") seeks attorney's fees and expenses from the equitable fund created by the approximately $31 million settlement[1] of the above-referenced action. This Court initially granted a $1,465,809.00 lodestar award, multiplied by a risk enhancement factor of 1.6, for a total of $2,351,694.40, plus $299,672.98 in expenses. (Orders dated November 26, 1991.) After an appeal of the Fee Order by objector, Myron C. Gackenbach ("Gackenbach"), the Court of Appeals remanded the risk multiplier issue to this Court for further analysis. In light of the Supreme Court's recent decision in *City of Burlington v. Dague*, — U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), this Court now decides to rescind its award of a 1.6 risk enhancement factor, and the unmodified lodestar figure will stand as counsel's fee award.

## I. BACKGROUND

Plaintiffs (the "class") commenced the underlying class action pursuant to §§ 10(b) and 20 of the Securities Act of 1933, §§ 11 and 15 of the Securities Exchange Act, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.

§ 1962(b), against Bolar Pharmaceutical Company ("Bolar") in August 1989. The class alleged that Bolar and certain of its officers and directors fraudulently obtained United States Food and Drug Administration approval to manufacture and market particular generic drugs. Familiarity with the underlying facts of the case is assumed.

During the October 3, 1991 settlement hearing, counsel applied, on behalf of the twenty-four firms who represented the class, for an award of attorney's fees and reimbursement of litigation expenses. Their request for a fee award of twenty-five per cent of the settlement fund was subsequently rejected, and the Court granted attorney's fees using the "lodestar" method.[2]

Attorneys were paid at a maximum rate of $300 per hour, and paralegals at a maximum rate of $60 per hour, which when multiplied by the combined attorney/paralegal hour total of 7,846.30, dictated an award of $1,465,809.00.[3] The Court then awarded a risk multiplier of 1.6, enhancing the fee to $2,351,694.40, a figure representing approximately 8.5 per cent of the total settlement fund as of the hearing date. The request for $299,672.98 in expenses was granted, along with interest on the amount awarded to run from the date of the Fee Order at the same rate as interest earned by the settlement fund.

Gackenbach appealed the Fee Order. On June 10, 1992, the Court of Appeals vacated the Fee Order on the issue of attorney's fees and remanded the case to this Court "for specific findings and a reasoned explanation for allowing a risk-enhancement multiplier of 1.6." *In re Bolar Pharmaceutical Co., Inc. Sec. Litig.*, 966 F.2d 731,

---

**1.** It is to be noted that in accordance with this Court's June 26, 1992 Order, counsel sold one million shares of Bolar common stock, which had been held in escrow for the plaintiff class. That sale realized $10,375,000. (Affidavit of Daniel L. Berger, lead counsel, dated July 10, 1992.)

**2.** The "lodestar multiplier," as defined by *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct.

1933, 1939, 76 L.Ed.2d 40 (1983), is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." The district court has discretion to determine the definition of "reasonable" on a case-by-case basis. *Id.* at 437, 103 S.Ct. at 1941.

**3.** Not all attorneys and paralegals were paid at the maximum rate.

733 (2d Cir.1992). This Court's opinion was affirmed in all other respects.[4]

## II. DISCUSSION

### A. *This Court's Basis for the Risk Multiplier, Before Foreclosure by Burlington v. Dague*

This Court, following standard practice in the Second Circuit, awarded a 1.6 risk enhancement factor to counsel. Counsel had requested a risk enhancement factor that would have raised the fee award to twenty-five per cent of the approximately $31 million common fund. The request was made on the ground that the case was taken on a contingency basis, and, as a result, counsel bore the risk of losing the suit, as well as incurring some financial loss due to the inevitable delay in the payment of fees.

■ The Second Circuit has historically awarded risk multipliers in common fund cases handled on a contingency basis. In order to ensure adequate representation to plaintiffs bringing suits that promote a desirable public policy, yet do not offer a promise of great financial gain, risk multipliers were granted to "reward[ ] counsel for those successful cases in which the probability of success was slight, and yet the time invested in the case was substantial." *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 226, 236 (2d Cir.1987) (*"Agent Orange II"*) (citing *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 471 (2d Cir.1974)).

In the instant action, although this Court acknowledges that there was some risk involved in taking the case on a contingency basis, the risk of failure was not great given the nature and extent of defendants' wrongdoings, and there was no difficulty in finding adequate counsel to represent the class. Thus, counsel was awarded a risk

multiplier substantially lower than requested, and lower than that frequently given by courts in this circuit. *See, e.g., Rabin v. Concord Assets Group, Inc.,* No. 89 Civ. 6130, 1991 WL 275757, 1991 U.S.Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991) (multiplier of over 4); *County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. 1477, 1480 (E.D.N.Y.1989) (multiplier of 2), *affirmed in part, reversed in part,* 907 F.2d 1295 (2d Cir.1990); *In re Union Carbide Corp. Consumer Prods. Business Sec. Litig.,* 724 F.Supp. 160, 170 (S.D.N.Y.1989) (multiplier of 2.3); *Weseley v. Spear, Leeds and Kellogg,* 711 F.Supp. 713 (E.D.N.Y. 1989) (multiplier of 2.3); *Rievman v. Burlington N.R. Co.,* 118 F.R.D. 29, 35 (S.D.N.Y.1987) (multiplier of 3.26).

Further, although the Supreme Court, in the fee-shifting context, has stated that a multiplier could be awarded as an appropriate adjustment for delay in payment, *Missouri v. Jenkins,* 491 U.S. 274, 283, 109 S.Ct. 2463, 2468, 105 L.Ed.2d 229 (1989), such delay was minimal in the case at bar where the suit was initiated in 1989, and fees were awarded in November of 1991.

### B. *Supreme Court's Elimination of Fee–Enhancing Risk Multipliers in Statutory Fee–Shift Cases*

■ Recently, in *Burlington,* the Supreme Court, by a 6–3 vote, decided that the lodestar amount of attorney's fees in federal fee-shifting cases may not be enhanced to reflect that the prevailing party's attorneys were retained on a contingency fee basis. *Burlington,* —— U.S. at —— – ——, 112 S.Ct. at 2643–44. In *Burlington,* plaintiffs brought a class action under the Solid Waste Disposal Act, 42 U.S.C. § 6972(e), and the Federal Water Pollution Control Act, 33 U.S.C. § 1365(d).[5] When plaintiffs prevailed, the district court

---

**4.** The Court's orders (1) denying Gackenbach's motion to have himself appointed as a special master for the purpose of examining plaintiff's attorney's fees and to be compensated for his costs in objection to the fee award, and (2) awarding the law firm of Abbey & Ellis $40,000 in fees and expenses were affirmed in their entirety. The Second Circuit denied class attorney Daniel Berger's request for sanctions pursu-

ant to Rule 38 of the Federal Rule of Appellate Procedure.

**5.** These statutes authorize a court to "award costs of litigation (including reasonable attorney ... fees) [to a] prevailing or substantially prevailing party." 42 U.S.C. § 6972(e); 33 U.S.C. § 1365(d).

awarded them "reasonable attorney's fees." The district court enhanced the lodestar amount by twenty-five per cent on the grounds that counsel was retained on a contingent fee basis, and, without the risk multiplier, the class would have faced substantial difficulty in obtaining competent counsel. The Court of Appeals for the Second Circuit affirmed the fee award. The Supreme Court reversed and denied the risk multiplier, holding that the typical federal fee-shifting statute does not permit an attorney's fee award to be enhanced on account of contingency. *Id.*

The Court gave several reasons for its decision. Under its rationale, an attorney's risk in taking a case on a contingent basis is largely the product of two elements: "(1) the legal and factual merits of the claim; and (2) the difficulty in establishing those merits." *Id.* at ——, 112 S.Ct. at 2641.

The first element is, with good reason, not considered in the lodestar analysis. As the Second Circuit concluded in *Agent Orange II*, to take the merits of a particular case into account in the risk multiplier analysis (that is, to award a high multiplier for a "difficult" case, and, conversely, a low multiplier for an "easy" case), "reward[s] counsel for bringing actions of dubious merit." *Agent Orange II*, 818 F.2d at 236. Assuming such multipliers would be awarded on a proportionate basis, " 'the net effect . . . would be to make a marginal case as attractive to bring as a very strong case.' " *Id.* (quoting *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 27 (D.C.Cir. 1984), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985)). Thus, the courts would face a tidal wave of unmeritorious litigation, which would inevitably hamper their ability to adjudicate cases with potentially meritorious claims. *Id.*

The *Burlington* Court determined that the second element of the equation (difficulty of establishing the merits of a case) is subsumed in the lodestar analysis. A difficult case will inherently result in a higher fee for an attorney, because more billable hours will be required to overcome the

difficulty, and the hourly rate of an attorney skilled and/or experienced enough to do so will reflect his or her expertise. *Burlington*, —— U.S. at —— – ——, 112 S.Ct. at 2641–42. Thus, to award a risk multiplier on the basis of the difficulty of the case would effectively double-count the value of the counsel's work. *Id.*

Furthermore, in *Burlington*, the Court reaffirmed its "general rejection of the contingent-fee model for fee awards," and stated that risk enhancement is not consistent with that view. *Id.* —— U.S. at ——, 112 S.Ct. at 2643; *see also Venegas v. Mitchell*, 495 U.S. 82, 87, 110 S.Ct. 1679, 1682, 109 L.Ed.2d 74 (1990) ("in construing § 1988, we have generally turned away from the contingent-fee model to a lodestar model of hours reasonably expended compensated at reasonable rates") (citations omitted). Because attorneys normally account for the risks of a given case in deciding whether or not to accept a case, a risk enhancement multiplier is, as stated, already contained in the contingent fee agreement. "To engraft [a risk multiplier] onto the lodestar model [is] to concoct a hybrid scheme that resorts to the contingent-fee model to increase a fee award but not to reduce it." *Burlington*, —— U.S. at ——, 112 S.Ct. at 2643.

Finally, the Court reasoned that "contingency enhancement would make the setting of fees more complex and arbitrary, hence more unpredictable, and hence more litigable." *Id.* This, the Supreme Court determined, would defeat a major purpose of the lodestar approach—ease of administration—and would surely result in an unwarranted influx of satellite litigation. *Id.;* *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

C. *Burlington Follows a Steady Trend of Restrictions on Fee–Enhancing Multipliers in Statutory Fee–Shift Cases*

Restrictions on the use of lodestar multipliers in fee shifting cases first appeared in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), where attorneys sought fees under 42 U.S.C. § 1988,

and requested that those fees be enhanced by a fifty per cent adjustment as a result of the novelty and complexity of the issues they litigated. The Supreme Court decided that the district court's approval of the enhancement was an abuse of discretion. It stated that "[t]he novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in a fee based on the number of billable hours [multiplied by] reasonable hourly rates." *Id.* at 898, 104 S.Ct. at 1548. The Court determined that novelty and complexity of legal issues are not appropriate factors justifying an upward departure from the basic fee award. *Id.* Further, the *Blum* Court expressed an unwillingness to consider "quality of representation" or "results obtained" in authorizing a multiplier, because these elements are normally subsumed in counsel's hourly rate, and are thus automatically factored into the lodestar figure. *Id.* at 900, 104 S.Ct. at 1549.

Affirming its earlier view, in *Pennsylvania v. Delaware Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*"Delaware Valley I"*), where counsel applied for a fee award in an action litigated under 42 U.S.C. § 7604(d) (the Clean Air Act), the Supreme Court stated that the standard lodestar calculation

> leaves very little room for enhancing the award based on [counsel's] post-engagement performance. In short, the lodestar figure includes most, if not all, of the relevant factors constituting a "reasonable" attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statu-

tory purpose of enabling plaintiffs to secure legal assistance.

*Id.* at 566, 106 S.Ct. at 3098.

After *Delaware Valley I*, the only fee enhancement factor that remained for the Supreme Court to decide was the "risk of loss" (or, simply, "risk") multiplier. In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*"Delaware Valley II"*), the Court stated that this device, which would enhance a fee award to reflect counsel's risk in taking a case on a contingent basis, was invalid in all but the most exceptional cases. *Id.* at 727, 107 S.Ct. at 3087. The need for a risk multiplier, to attract competent counsel, had to be both pronounced and documented in order to justify its application. *See id.* at 728, 107 S.Ct. at 3088 (White, J., concurring).

### D. *The Ban on Fee Enhancement for Contingency in Statutory Fee Shifting Cases Extends to Equitable Fund Cases*

■ Although the Supreme Court has yet to address whether the limitations on multipliers propounded in *Blum, Delaware Valley I, Delaware Valley II*, and *Burlington* fully apply to equitable fund cases, and although lower courts are split on the issue,[6] this Court now holds that they do. In *Agent Orange II*, the Second Circuit referred to *Blum* and *Delaware Valley I* when it noted that "equitable fund cases may afford courts more leeway in enhancing the lodestar, given the absence of any legislative directive," *Agent Orange II*, 818 F.2d at 234 n. 2. However, that court's language strongly suggests that the doctrine created by the statutory fee cases

---

**6.** *See, e.g., Shlomchik v. Richmond 103 Equities Co.*, 763 F.Supp. 732, 744 (S.D.N.Y.1991) (in a securities fraud and RICO action, the court declined to award a lodestar multiplier, citing *Agent Orange II, Delaware Valley II*, and *Blum* ). *But see Weseley v. Spear, Leeds & Kellogg*, 711 F.Supp. 713 (E.D.N.Y.1989) (in a securities fraud class action, court approved a 2.3 lodestar multiplier to the attorneys' fee award from an equitable fund, citing contingency risk, complexity of litigation, and quality of representation); *In re American Integrity Securities Litiga-*

*tion*, No. 86–7133, 1989 WL 89316 at *9, 1989 U.S.Dist. LEXIS 9207 at *28 (E.D.Pa. July 28, 1989) (interpreting *Agent Orange II* as standing for the proposition that statutory fee decisions are not controlling in common fund cases); *Rievman v. Burlington N.R. Co.*, 118 F.R.D. 29, 35 (S.D.N.Y.1987) (in a securities class action, court approved a 3.26 lodestar multiplier to the attorney's fee award from the settlement fund, citing counsel's high quality of representation in a complex and risky litigation).

may indeed be applicable to equitable fund cases. In fact, the applicability of *Delaware Valley II* to equitable fund cases has been recognized. In *Schwartz v. Novo Industri A/S*, 119 F.R.D. 359 (S.D.N.Y.1988), the court denied a fee enhancement for the contingent nature of the action, stating that no fee enhancement for risk is appropriate absent certain specified circumstances, such as inability of plaintiff to attract counsel. *Id.* at 366 (citation omitted).

In *Kronfeld v. Transworld Airlines, Inc.*, 129 F.R.D. 598 (S.D.N.Y.1990), a case that follows a philosophy similar to the one this Court now adopts, plaintiffs brought a class action alleging violations of certain provisions of the Securities Act of 1933, and of the Securities Exchange Act of 1934. The case was settled, creating an equitable fund of $3.4 million, plus interest, from which plaintiffs' attorneys sought fees and expenses. *Id.* The *Kronfeld* court declined to use a risk multiplier in its fee award calculations, reasoning that the Second Circuit has deemed the tenets set forth in the Supreme Court's fee-shifting cases relevant in an equitable fund context. *Id.* at 609 (discussing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 222 (2d Cir.1987) (a class action suit that resulted in a settlement that created an equitable

fund), *cert. denied*, 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987) ("*Agent Orange I* "), *Agent Orange II, Blum,* and *Delaware Valley I* ). The *Kronfeld* court then applied the rationale of the above-mentioned statutory fee cases in denying a fee enhancement on the basis of quality of representation, complexity of litigation, and the risk posed by taking the case on a contingency basis. *Id.*

Finally, application of the *Burlington* rationale to equitable fund cases does not defeat the purpose of the equitable fund doctrine. As the Second Circuit has stated, "The underlying rationale for the doctrine is the belief that an attorney who creates a fund for the benefit of a class should receive reasonable compensation from the fund for his efforts." *Agent Orange I*, 818 F.2d at 222 (citing *Central R. & Banking Co. v. Pettus*, 113 U.S. 116, 125, 5 S.Ct. 387, 391, 28 L.Ed. 915 (1885)). That counsel will receive reasonable compensation for his work is ensured by the lodestar equation, which would not itself be affected by the elimination of a risk multiplier.[7]

### E. *A Risk Multiplier Should Not Be Awarded in the Instant Case*

■ In *Burlington*, the Supreme Court closed the door on risk multipliers in statu-

---

7. Some courts have decided that the different rationales behind the equitable fund doctrine and statutory fee-shifting preclude application of statutory fee-shift cases to equitable fund scenarios. The Tenth Circuit has stated that "statutory fees are intended to further a legislative purpose by punishing the losing party and encouraging private parties to enforce substantive statutory rights," while "common fund fees are neither intrinsically punitive nor designed to further any statutory public policy." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir.), *cert. denied*, 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988). Courts, such as that in *In re American Integrity Securities Litigation*, No. 86–7133, 1989 WL 89316, 1989 U.S.Dist. LEXIS 9207 (E.D.Pa. July 28, 1989), have held the different rationales behind the equitable fund doctrine and statutory fee-shifting to preclude application of statutory fee-shift case law to equitable fund situations. That court remarked that "[a]llowing enhancement of the lodestar to compensate for the risk involved in statutory fee cases may penalize the defendant with the strongest defenses because it pays a higher fee if plaintiff was unlikely to prevail than if plaintiff was sure to prevail." *Id.* Such a problem

would not arise in a common fund context because the attorney's fees come from a plaintiff's fund, not from the defendant.

Also, "[a]ssessing contingency risk multipliers against losing defendants in statutory fee cases requires those defendants to subsidize plaintiffs' attorneys for unsuccessful suits brought against other defendants." *Id.* This, according to the court, goes against Congress' intent to award attorney's fees only to victorious parties. In equitable fund cases, this concern is not applicable, since the attorney's fees are awarded on the basis of equity and not statutory requirement. *Id.*

Although these arguments have some merit, the overriding purpose of fee-shifting statutes, to ensure adequate representation in socially desirable litigation, is identical to the ultimate rationale of the equitable fund doctrine. Just as competent counsel might not be persuaded to take a given case without the lure of a fee-shifting statute, the same counsel may not be willing to accept an equitable fund case without the lure of receiving enhanced compensation for his efforts.

tory fee cases. Just as the Second Circuit has applied the standards set forth in statutory fee cases such as *Blum, Delaware Valley I,* and *Delaware Valley II* to equitable fund cases, it will presumably apply the precepts of *Burlington* as well. Viewing the case at bar in this light, it is clear that no fee multiplier should be awarded to counsel.

First, counsel asserts that it took a significant risk in bringing and prosecuting this action because the litigation was undertaken on a contingency basis, which would have yielded no fee had the class not prevailed. (Plaintiffs' Proposed Findings of Fact at 5.) This argument has been foreclosed by *Burlington. See supra* IIB. Risk of failure on the case's merits was a possibility counsel presumably considered before taking the case.[8] Awarding a risk multiplier would provide counsel with a windfall, since a reward for their risk-taking would, essentially, be double-counted because, as stated above, the difficulty of the litigation is taken into account in the billable hours and fee rates used to calculate the lodestar figure. Enhancement of that figure is, therefore, not necessary.

■ Counsel's contention that even if the class was successful they might not be able to collect a judgment against defendants, a situation that would result in nonpayment of attorneys' fees, is no ground for awarding a fee multiplier. As the Supreme Court stated in *Jenkins*, "In [*Delaware Valley II*], 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), we rejected an argument that a prevailing party was entitled to a fee augmentation to compensate for the risk of nonpayment." *Jenkins*, 491 U.S. at 282, 109 S.Ct. at 2468; *see also Huntington Branch, National Association for the Advancement of Colored People v. Town of Huntington, New York*, 961 F.2d 1048, 1050 (2d Cir.1992) (same).

F. *This Case Satisfies Justice O'Connor's Concurrence Test Set Forth In Delaware Valley II*

Justice O'Connor, concurring in *Delaware Valley II*, 483 U.S. at 733, 107 S.Ct.

at 3090, stated that a fee award should be enhanced if such an enhancement is "necessary to bring the fee within the range that would attract competent counsel." *Id.* In her *Burlington* dissent, Justice O'Connor reiterated "the view that in certain circumstances a 'reasonable' attorney's fee should not be computed by the purely retrospective lodestar figure, but also must incorporate a reasonable incentive to an attorney contemplating whether or not to take the case in the first place." *Burlington,* —— U.S. at ——, 112 S.Ct. at 2648 (citation omitted).

Even under Justice O'Connor's position, which has been specifically rejected by the Supreme Court, *id.* —— U.S. at ——, 112 S.Ct. at 2642, this Court would still be compelled to deny a multiplier in the case at bar. Dozens of New York City's top law firms vied for the opportunity to represent the instant class; there was simply no problem attracting competent counsel, even without the promise of a fee enhancement award.

### III. CONCLUSION

For the foregoing reasons, the 1.6 risk multiplier is rescinded, and counsel is awarded $1,465,809 in fees, plus $299,-672.98 in litigation expenses, with interest on the amounts now granted to run from the date of the original Fee Order at the same rate of interest earned on the settlement fund.

SO ORDERED.

---

**8.** Plaintiffs' burden of proving defendants' scienter, and defendants' vigorous and public defense of their actions, (Plaintiffs' Proposed Findings of Fact at 16), does not alter this analysis. Such circumstances were clearly foreseeable at the inception of the suit.